THE STATE ex rel. EATON et al. v. GMELICH, State Treasurer.

In Banc, December 24, 1907.

1. **STATE SANITARIUM: Fund.** Under the laws of this State a "State Sanitarium Fund" has been created, and it is the duty of the State Treasurer to credit said fund with all moneys collected from counties and cities as pay for keeping and maintaining indigent patients in the sanitarium, and not to pass them to the general revenue fund.    The intent of the General Assembly to create such a fund is to be gathered from section 27a of the Appropriations Act of 1907, and section 24 of the Act of 1905, making applicable to said institution the laws of the State governing other  eleemosynary institutions, and other statutes.

2. ———: ———: **State Treasurer: Sanitarium's Financial Officer.** The appropriation act appropriated "out of the State Treasury, chargeable to the Missouri State Sanitarium, the sum of $75,000, the same being derived from the payment into the State Treasury, by the treasurer or other financial officer of said institution, in pursuance of the laws of this State;" and the law creating the sanitarium made it the duty of its superintendent each month to furnish the State Treasurer such data as "to enable the State Treasurer to collect from the various counties or cities such sums as may be owing to the institution" for the care and treatment of patients, and made it the duty of the State Treasurer to collect said sums from the cities and counties sending indigent patients. *Held*, that the State Treasurer is by the act made a "financial officer" of the institution, and the money he receives is "the sums owing to the institution," and it cannot

be maintained, therefore, that the appropriation act, by using the words "derived from payment by the treasurer or other financial officer of said institution," did not include funds paid directly to the State Treasurer by a city or county for an indigent patient.

## Mandamus.

PEREMPTORY WRIT AWARDED.

*James F. Ball* for relators.

It is the contention of relators that the General Assembly of 1907 created and established the "Missouri State Sanitarium Fund," and made proper appropriation for the support of this institution by section 27a, Laws 1907, page 37. It is clear that if the Legislature had used the following language (which it did) to-wit: "There is hereby appropriated out of the State Treasury, chargeable to the Missouri State Sanitarium Fund, the sum of seventy-five thousand dollars ($75,000.00)," and then quit, respondent would have had to place this amount to the credit of this institution; but because the General Asembly, not wishing to appropriate anything to its support except out of the earnings, had added the following: "The same being derived from the payment into the State Treasury by the treasurer or other financial officer of said institution, in pursuance of the laws of this State, or so much thereof as may be necessary," he claims he is not authorized to place the amount collected by him, and all other amounts hereafter collected by him from a like source, because he did not receive such amount from the "treasurer or other financial officer of said institution." Now, this is a misconception of the law, for this reason: In all other institutions, and in the management of their fiscal affairs, it is the business of the treasurer, or some other financial officer, of the institution to collect all moneys earned by it from all sources; but in

the collection of the funds due this institution from the indigent patients this duty is imposed upon respondent by law rather than upon the local treasurer or other financial officer. The law giving him the authority, or empowering him to collect funds earned by the institution, gives him the authority and empowers him to place the same to the credit thereof. R. S. 1899, sec. 7803; Laws 1907, sec. 12, p. 308. By reason of the authority given respondent by the law cited above, he becomes to that extent a financial officer of this institution, and in collecting such fund or funds he does so as the fiscal officer of the institution and not as State Treasurer.

*Herbert S. Hadley*, Attorney-General, and *N. T. Gentry*, Assistant Attorney-General, for respondent.

(1)    The Missouri State Sanitarium was established by an act of the General Assembly, passed and approved April 15, 1905. Laws 1905, pp. 292-7. By an act of the General Assembly, passed and approved March 19, 1907 (secs. 14 and 15), provision is made for the conduct of the affairs of said institution. Certain patients are received free of charge, while others are what are termed "pay patients." By section 15, the State Treasurer is authorized to collect from the cities and counties a sum of money for the care and treatment of each patient. This act is a lengthy one, but there is no section which authorizes the State Treasurer to open an account in the name of the "Missouri State Sanitarium Fund." There is, therefore, no fund authorized by law for said institution, and the treasurer has no authority to supply an omission made by the General Assembly. If the General Assembly had intended that the fund should be established for the benefit of said institution and that the State Treasurer should open an account with said institution in the books of his office, it is reasonable to

suppose that that body would have so stated in plain
and unmistakable terms. For their error or omission,
either intentional or by neglect, the State Treasurer
is not responsible, and cannot be compelled to do
something, even for the accommodation and benefit of
an eleemosynary institution. The State Treasurer is
governed exclusively by the statute. He can neither
pay out or receive money, except as authorized by the
statute, being exclusively a creature of the statute, as
directed by the State Constitution. R. S. 1899, sec.
10452; Const., sec. 1, art. 5. (2) It is true that in
section 27a, p. 37, Laws, 1907, the General Assembly
used the term "Missouri State Sanitarium Fund."
The use of such a term, however, cannot be construed
to mean that the General Assembly established such
a fund. The solemn passage of an act by both bodies
of the General Assembly, and its signature by the
Eqecutive cannot be dispensed with by simply insert-
ing two or three words in the appropriation act. The
appropriation of money of the State Treasury is one
thing, but the establishment of a fund, and the au-
thority to the State Treasurer to place certain moneys
to the credit of that fund is an entirely different mat-
ter. It is insisted, therefore, that this court should
not read into the act something which the act does
not contain, and which this court has no right to pre-
sume the lawmaking body ever intended to insert
therein.

GRAVES, J.—This is an original proceeding in
this court, wherein the relators, who constitute the
Board of Managers of the Missouri State Sanator-
ium, seek, by writ of mandamus, to compel respond-
ent, who is State Treasurer, to open an account in the
books of his office with the said Missouri State Sana-
torium in the name of the "Missouri State Sanator-
ium Fund," and to place to the credit of said fund

the sum of $17.89, which said respondent has collected from the city of St. Louis as pay for keeping and maintaining indigent patients from said city in the sanatorium, and to further place to the credit of such fund any and all other moneys collected from the like or any other source for such sanatorium, and to pay out such funds for the  maintenance of said sanatorium upon orders issued by the proper officers of said sanatorium. Relators aver that by virtue of section 27a of the act of the General Assembly, approved April 15, 1907, and section 15 of an act of the General Assembly, approved March 19, 1907, and section 7808, Revised Statutes 1899, it became and was the duty of respondent to open up an account as aforesaid, and to collect and credit the moneys as aforesaid, and to pay the same out in the manner and for the purpose as aforesaid.    These several statutes are as follows:

"Sec. 27a.    There is hereby appropriated out of the State Treasury, chargeable to the Missouri State Sanatorium Fund, the sum of seventy-five thousand dollars, the same being derived from the payment into the State Treasury, by the treasurer or other financial officer of said institution, in pursuance of the laws of this State, or so much thereof as may be necessary." [Laws 1907, p. 37.]

"Sec. 15.    *Support of free patients.*—At least once in each month the superintendent of the sanatorium shall furnish the State Treasurer a list of all free patients in the sanatorium, together with sufficient facts to enable the State Treasurer to collect from the various counties or cities such sums as may be owing to the institution for the examination, care, clothing, and treatment of the patients who have  been  received by the institution and who are shown by the statement of the proper county or city officials, as hereinbefore provided, to be unable to pay for their care and treatment.    State Treasurer shall there-

upon collect from the various counties or city the sum due for the care and treatment of each such patient at a rate not exceeding five dollars a week for each patient.''   [Laws 1907, p. 309.]

"Sec. 7808.   *Certain funds created.*—That there is hereby established and created in the State Treasury of this State the following named funds:   'State Hospital for Insane No. 1,' 'State Hospital for Insane No. 2,' 'State Hospital for Insane No. 3,' 'School for Blind,' 'School for Deaf,' 'Reform School for Boys,' 'Industrial Home for Girls,' 'Earnings of Missouri Penitentiary,' 'University,' 'State Normal School, First District,' 'State Normal School, Second District,' 'State Normal School, Third District,' and 'Lincoln Institute.'   Whenever any moneys are paid into the State Treasury under the provisions of this article, they shall be receipted by the State Treasurer into and placed to the credit of the fund to which they respectively belong, so that money derived from each institution may be placed to the credit of the fund herein provided for that institution.''

Respondent by his return, says:

"Now, on this day, comes the respondent, and, for return to the alternative writ herein, says that he admits that the relators are now and were at the time stated in the alternative writ duly appointed, qualified and acting Board of Managers of the Missouri State Sanatorium, which institution was established and located at Mount Vernon, Lawrence county, Missouri, according to law.   He admits that he is now and was at the times mentioned in said writ the duly qualified and acting Treasurer of the State of Missouri.   He admits that the General Assembly of Missouri, by an act passed and approved April 15, 1907, made provision for said institution, as stated in section 27a of said act.   He admits that section 15 of said act provides for the support of free patients,

and that said section of said act is correctly copied in said alternative writ. He further admits that he has collected from certain counties and cities now maintaining indigent patients in said institution, to-wit, in the city of St. Louis, the sum of $17.89, and that he will in the course of his official duty, from time to time, probably collect other amounts due said institution; and he admits that the board of managers of said institution have requested him to open an account in the books of his office in the name of the 'Missouri State Sanatorium Fund,' and to place said amount now collected, to-wit, $17.89, and all other amounts coming to his said office from the same source to the credit of the 'Missouri State Sanatorium Fund.' He finally admits that he has refused to place said sum, and any other sums collected from a like source to the credit of the 'Missouri State Sanatorium Fund,' and that he has refused to open on the books of said office an account to said fund until directed to do so by this Honorable Court. And, further, the respondent states that there is no authority in law for the placing of said sum or any other sum to said account; and that the General Assembly of Missouri has failed to provide, by law, for the establishment of such a fund; and that the respondent has no right or authority to open an account to such a fund, without direct authority given him by law. Wherefore, respondent respectfully requests that no peremptory writ of mandamus issue, and that he go hence with his costs.''

Upon the filing of this return, relators filed their motion for judgment upon the pleadings.

From the foregoing, it will be seen that the sole question is a construction of section 27a of the Act of April 15, 1907, which is an appropriation act, and the Act of March 19, 1907, which is an act providing for the government of the Missouri State Sanatorium for the treatment of incipient pulmonary tuberculosis, and

section 7808, Revised Statutes 1899, and the amendatory act of 1901 which creates certain funds for the several eleemosynary and penal institutions of the State. Respondent's contention is that by no act of the Legislature has a "Missouri State Sanatorium Fund" been created, and until such is created, he has no legal right to open up an account with such a fund in the books of his office or to credit the same with moneys received or debit the same with moneys paid out. The issue therefore is purely one of statutory construction.

I. First, we are called upon to say whether or not there has been by law created the "Missouri State Sanatorium Fund." Of the many canons of construction in the interpretation of legislative acts, the chief one is that which requires us to find the legislative intent and purpose. The intent and spirit of the legislative act should be made to speak, if such can be done without doing violence to express language. The Missouri State Sanatorium had its birth by the Act of 1905, approved April 15, 1905. [Laws, 1905, p. 292, *et seq.*].  Section 24 of that act provides:

"The managers of said institutions shall have the powers, rights and privileges given to and perform all the duties required of the board of managers of other state eleemosynary institutions in this State, and said sanitarium hereby established shall, in all respects not inconsistent with this act, be governed by and be conducted according to the laws governing other eleemosynary institutions in this State, with like powers, privileges and immunities, as far as the same are applicable and not inconsistent with this act."

In the succeeding act of 1907, supra, we have section 12, which reads:

"The Missouri State Sanatorium, located at Mount Vernon, is hereby declared to be an eleemosynary institution of this State, and all laws contained in article 1 of chapter 118 of the Revised Statutes of 1899,

and acts amendatory thereof, are declared to be applicable thereto.''

We start then with this sanatorium as one of the eleemosynary institutions of the State. By the acts of 1907, approved respectively April 15th and March 19th, no provision is made to meet the running expenses of the institution, except such as is made by section 27a, supra. It is clear from all the acts that it was the intention of the law-makers that the pay received for the treatment of patients was to be used to defray the running expenses. By section 16 of the act approved March 19th, 1907, private patients may be received and treated, "when there is room in said sanatorium for admission of said applicants, without interfering with preference in the selection of patients, which shall always be given to the indigent." So that under the law these indigent patients or county charges have the preference and if the funds paid for their treatment by the several counties and the city of St. Louis are to be diverted to the general revenue fund of the State, the institution, if filled with these preferred patients, would not have a dollar with which to pay running expenses. By section 24 of the Act of 1905, supra, the laws governing other eleemosynary institutions are made applicable to this institution. Of those laws we have article 9, chapter 118, in which section 7808, supra, is found. By the provisions of this article, the moneys received by the institutions are required to be paid to the State Treasurer, and by him placed in the respective funds created by law as stated in section 7808, supra. Then section 7809 of that article reads:

"That any moneys in the State Treasury to the credit of any of the funds in this article created, paid therein under the provisions of this article, or so much thereof as may be necessary, shall be appropriated by

the General Assembly for the support or improvement of the institution to which the fund belongs.''

When section 7808, supra, was enacted the Missouri State Sanatorium was not in existence. It should be remarked here, a fact which seems to have escaped attention of counsel, that this section was amended by the act approved April 13, 1901, by adding therein the words, ''State Hospital for Insane, No. 4,'' since which time there has been no amendment, that we are able to find. Now considering all these statutes together, and considering the further fact that if all the earnings of this institution are to go to the general revenue fund, unless this special fund has been created, was there a legislative intent sufficiently expressed in section 27a, supra (Laws 1907, p. 37), to create the ''Missouri State Sanatorium Fund?'' We are inclined to think there is and so hold. Had there been added after the word ''fund'' in the second line of said section, the words ''which is hereby created'' there would be no doubt or question, yet it seems to us when we consider all the statutes together, the legislative intent is just as apparent as if these words had been written therein. We therefore hold that within the meaning of the law there has been created the fund aforesaid.

II.  Respondent, however, makes a further contention, which we omitted from our statement, and that is, that the money which he has and which he will in the future receive from the different counties, are not moneys ''derived from the payment into the State Treasury, by the treasurer or other financial officer of said institution, in pursuance of the laws of the State,'' as specified by section 24a, supra.

Under the provisions of the Law of 1907, section 15, supra, it is made the duty of the superintendent of the sanatorium at least once each month to furnish the State Treasurer a list of the free patients, together

with such data as "to enable the State Treasurer to collect from the various counties or cities such sums as may be owing to the institution for the examination, care, clothing, and treatment of the patients," etc. It will be noticed that the funds to be collected by the Treasurer are funds "owing to the institution" and not to the State. In our judgment, the State Treasurer has thus been made a financial officer of this institution for the purpose of collecting these moneys, and as such falls under the term "other financial officer of said institution," as mentioned in said section 24a.

From these views, it follows that the peremptory writ of mandamus should be awarded, and it is so ordered.

All concur.