Alvin SITEMAN and Ruth Siteman,
Plaintiffs-Appellants,

v.

WOODWARD–CLYDE & ASSOCIATES,
INC., et al., Defendants-Respondents.

No. 34697.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Oct. 2, 1973.

Motion for Rehearing and to Transfer Denied
Nov. 13, 1973.

Application to Transfer Denied Dec. 10, 1974.

Blumfeld, Kalishman, Marx & Tureen, Jerome Kalishman, St. Louis, for plaintiffs-appellants.

Stinson, Mag, Thomson, McEvers & Fizzell, John C. Noonan, Kansas City, and Lewis, Rice, Tucker, Allen & Chubb, R. Richard Straub, St. Louis, for defendants-respondents.

GUNN, Judge.

Action by landowners against engineers for professional malpractice in the preparation and submission of a report on soil conditions and foundation requirements at the site of a proposed building development. Defendant engineers pleaded and submitted plaintiffs' contributory negligence in failing to study the soil report. Verdict and judgment were for the defendants and plaintiffs appeal. The issues raised by appellants on review relate to whether the trial judge erred in giving or failing to give certain instructions. We affirm the judgment.

Plaintiff Alvin Siteman[1] is a real estate developer in the Clayton Missouri area. With his wife, Ruth, Siteman acquired a ninety-nine year lease on the land now occupied by the Clayton Bank Building for the purpose of constructing and operating a building thereon. The Siteman Organization, Inc., a corporation in which Siteman was majority stockholder and president, acted as supervising agent for the project during its construction and operation. In 1965, Siteman directed defendant to make two test borings and a preliminary analysis of soil conditions in the project site, which was done. Defendants were then engaged to prepare a full soil conditions report which was submitted to the Siteman Organization, Inc., in February, 1966. The report consisted of twenty-one pages of technical data, drawings and exhibits and a narrative of eighteen pages of conclusions and recommendations. The substance of the report was that at the project site the plaintiffs could expect to find, in order, overburdened soils, a boulder and cobble layer, a lower and heavier limestone layer, several one to three foot thick ledges of limestone and then various types of hard shales. The narrative portion of the report indicated that the overburdened soils could be excavated with standard earth-moving equipment; that the upper and lower formations of limestone could be ex-cavated by power shovels or heavy rippers ("ripping" is a technique of excavation used to tear out sheets of hard rock by the use of power equipment, such as a bulldozer, equipped with an extension part containing metal teeth which grip the material and rip or tear it loose); that some blasting might be required to remove the more massive limestone ledges. The narrative portion of the report did not state how the shale might have to be removed. The report was read by Siteman, Leonard Adreon, a Vice President of the Siteman Organization, Inc., and Harold Tepper, an engineer and Vice President of the Siteman Organization, Inc., in charge of consultation programs and project engineer for the Clayton Bank project. Siteman, a graduate of Massachusetts Institute of Technology, although not an engineer or soils expert, stated that he read the narrative of the report but did not read the detailed technical material, did not consult with defendants or Harold Tepper for assistance in understanding the report. Siteman testified that some of the facts in the report were meaningless to him.

The initial architect's estimate for costs of excavation, footings and back-filling was $371,184.70. H. B. Deal Construction Company, the low bidder for the excavation, submitted an excavation bid of $261,000.00. Without attaining assistance in the interpretation of the technical information in the report, and armed with the report, Siteman entered into negotiations with Deal Construction Company to reduce the cost of the excavation and was successful in getting a reduced bid, from $261,000 to $171,000. Further negotiations continued between Deal and Siteman on the excavation expenses and a final agreement was reached covering excavation costs for $141,000, if Siteman would take the risk of moving all excavation materials that could not be removed by standard earth-moving equipment. Siteman testified that it was his understanding in the negotiations that if plaintiffs "would take the risk of the re-

---

1. When used in singular form "plaintiff" refers to plaintiff Alvin Siteman.

moval of any materials in the hole in the excavation that could not be moved by standard earth-moving equipment, then the price would be $30,000 less to us. If, on the other hand, we would elect to let the contractor take all the risk to excavate to the bottom whatever materials were there, we would have to pay them $30,000 more." Siteman elected the first alternative and accepted the risk. The contract provided that the contractor would be paid extra for the removal of certain subsurface materials and specifically for the removal of certain materials, including shale, which could not be removed with a front-end loader or particular type of power shovel and had to be drilled and blasted for removal. In reaching his decision, Siteman stated that he relied on the report, although the risk of excavation was made without interpretation of the report by any expert and many of the report's terms meant nothing to him. It was his testimony that since the report said nothing about shale being any problem to excavate, he concluded that it would be no problem. Siteman testified that he had had no previous experience or difficulty in removing shale in other developments in the Clayton area with which he had been involved and consequently believed that standard earth-moving equipment would be sufficient for removing the shale. Leonard Adreon, although not an engineer or soils expert, also concluded that since the report made no mention about the shale, its removal would be no problem. However, Harold Tepper, Vice President of Siteman Organization, Inc., and engineer for the project, testified that he was not misled by the report and from its reading concluded that something more than ordinary means would be necessary to excavate the shale. He further testified that at the contract negotiations between the contractors and officers of Siteman Organization, Inc., prior to starting the excavation project the subject of excavating the hard shale was discussed and it was determined that the shale would be difficult to remove. Mr. Tepper had also advised the Siteman Organization to accept the contractor's

$30,000 offer and not take the risk of excavating the material. His advice was not followed. Mr. Tepper also expressed the opinion that blasting was not necessary for the removal of the shale; that efficient use of front-end loader equipment to rip the shale would have been sufficient. Defendants offered to interpret the report for the Siteman Organization, Inc., but were not requested to do so, neither were they contacted or asked to participate in the excavation contract discussions. During the excavation, no problem was encountered in removing any of the materials, including the limestone, until the hard shale was reached. After demonstrations by the contractor to Siteman that normal earth-moving equipment would not remove the shale, it was determined by the contractor that it would be necessary to blast and rip it with other than the standard earth-moving equipment referred to in the contract in order to excavate the hard shale. The shale was removed by blasting on a time and material basis in accordance with the contract negotiated by which Siteman had agreed to take the risk of excavating the certain materials, including shale, referred to in the contract. The contractors for Siteman and his soil expert testified that blasting was necessary for the removal of the shale and that ripping with a front-end loader of the type specified in the excavation contract would not remove the shale.

The evidence by witnesses for plaintiff and defendants was generally that the method of removing shale of the type encountered by blasting had not been utilized in other construction site areas in Clayton immediately adjoining the Clayton Bank project. The Superintendent of the project for the excavation contractor acknowledged that defendants' report gave warning to them of the shale's hardness and that it would have to be ripped to be removed; that the only true test for determining the type of equipment necessary to remove hard shale would be the use of equipment on it after it had been uncovered in the excavation. Plaintiff's Soils

expert Engineer, Henry Reitz, testified that the report was misleading for failing to state how the shale should be removed, but he admitted that there was no definite rule requiring that specific excavation problems be pointed out in a soil report. Mr. Reitz further testified that in his opinion as a soils expert, an owner who did not understand all of a soils report would not be exercising ordinary care if he did not seek consultation from experts on the report.

Witnesses for the defendants testified that they were unaware of any necessity for blasting shale in the Clayton Bank area although similar shales nearby had required ripping; that standard earth-moving equipment of the type referred to in the construction contract had been satisfactory for the removal of shale on adjoining projects.

The added excavation costs above the contract price negotiated by Siteman and Deal for excavation amounted to $191,480.-19. Thus, the ground work was laid for this litigation: the plaintiff urging that if the report had been clear with regard to the difficulty of shale removal, he would not have taken the risk of excavation for $30,000 less on the excavation bid and thereby have saved $191,480.19—the defendants countering that Siteman could have avoided his problems merely by consulting with them or listening to his own engineering expert, Tepper, particularly since Siteman did not understand or fully read the report.

The jury returned a verdict favorable to defendants.

Plaintiffs' first major point of error relates to the giving of Instruction No. 7,[2]

which plaintiffs contend was erroneous because, a) it deviated from MAI No. 32.06 by omitting the words "the injuries and" from the third paragraph; b) the findings required by the first paragraph of the instruction were insufficient to constitute negligence as a matter of law; c) it failed to require a finding that Siteman had knowledge and appreciation of the danger of injury which his conduct involved; d) in reciting that Siteman failed to read and obtain assistance with the report, it disregarded the evidence that Siteman's agent, Harold Tepper, read and understood the report; e) there was no evidence to support the required finding that Siteman's failure to read the entire report caused any damage.

■■■ It is the general rule in Missouri that where an MAI instruction is applicable, its use is mandatory and where modification is not needed, it is error to modify unless made manifest by the proponent of the instruction that no prejudice could have resulted from the modification or deviation. Brown v. St. Louis Public Service Co., 421 S.W.2d 255 (Mo. banc 1967). But it is also aphoristic that an MAI instruction should be modified to properly present the issue. Jurgeson v. Romine, 442 S.W.2d 176 (Mo.App.1969). In this case, which involved only monetary damages to the plaintiff and did not (and indeed could not) result in any physical injury, deletion of the words relating to physical injury would be a proper clarification of the instruction. Therefore, in a malpractice suit where the only damages can be monetary damages—as opposed to a malpractice action where physical or mental injuries can be sustained, for example, medical malpractice—the omission of the words relat-

2. "INSTRUCTION NO. 7.

Your verdict must be for the defendants on plaintiffs' claim for damage, whether or not defendants were negligent, if you believe:

First, plaintiff Alvin Siteman failed to read all of the defendants' Soil and Foundation Investigation report and knew he did not understand all of said report, and failed to obtain assistance in understanding said report, and

Second, plaintiff Alvin Siteman's conduct submitted in paragraph First was negligent, and

Third, such negligence of plaintiff Alvin Siteman directly caused or directly contributed to cause the damage plaintiffs may have sustained.

MAI 32.06"

ing to "injuries" in the MAI instruction is not error, and it was not error to eliminate the words "the injuries and" from the instruction. However, since Instruction No. 7 did modify MAI 32.06, copies of the instruction should have been marked "MAI 32.06—Modified". But we find no prejudicial error in the omission of the word "Modified" from the instruction. Carvitto v. Ryle, 495 S.W.2d 109, 115 (Mo.App. 1973).

■ Plaintiffs argue that the allegations of Paragraph 1 do not constitute negligence as a matter of law. According to Instruction No. 7, the jury can find plaintiffs contributorily negligent if they find all of the following: 1) plaintiff failed to read the entire report; 2) plaintiff knew he did not understand all of the report; 3) plaintiff did not seek assistance in understanding the report; 4) the conduct of 1, 2 and 3 was negligence and 5) such negligence directly caused or directly contributed to cause plaintiffs' damage. Plaintiff has argued that the jury could find him negligent in failing to obtain assistance even though plaintiff understood the narrative portions of the report. However, it is clear from the instruction that the jury must find all of the above facts and then conclude plaintiff was negligent from them. The required findings are in the conjunctive and not the disjunctive, and the findings required by paragraph 1 do not infer negligence as a matter of law but only if the jury concludes therefrom that the plaintiff was negligent. The evidence in this case was that in the opinion of plaintiffs' own soils expert witness that an owner would not be exercising ordinary care who did not seek an understanding of a technical soils report which he did not understand and only read in part. There was sufficient evidence, therefore, for the jury to find the plaintiff contributorily negligent. The elements of Instruction No. 7 properly constituted sufficient hypothesis upon which the jury could predi-

cate a finding of contributory negligence. Koirtyohann v. Washington Plumbing and Heating Co., 494 S.W.2d 665 (Mo.App. 1973).[3]

Plaintiff argues that Instruction No. 7 failed to contain a modification which would require a finding that Siteman knew and understood the danger of proceeding with the project without understanding the entire report and cites Koirtyohann v. Washington Plumbing and Heating Co., 471 S.W.2d 217 (Mo.1971) in support of his position. The Koirtyohann case held that "in a situation in which one's knowledge of general conditions from which danger arose is not necessarily knowledge and appreciation of that danger, before one charged with contributory negligence can be convicted thereof, there must be a finding that he acted or failed to act with knowledge, and appreciation, actual or constructive, of the danger of injury which his conduct involved." Plaintiff seeks to analogize the instant case to Koirtyohann, in effect to say, Siteman knew he did not understand the report but did not know that such failure to understand would cause him injury. The Koirtyohann case cites with approval Bledsoe v. Northside Supply and Development Co., 429 S.W.2d 727 (Mo.1968), in which the Supreme Court adopted the two types of contributory negligence enunciated in Restatement of Torts 2nd § 466(a). According to the Restatement there are two types of contributory negligence: 1) an intentional and unreasonable exposure of an individual to danger created by the individual's own negligence and which danger the individual knows or has reason to know. (This is commonly referred to as "Assumption of Risk"); 2) conduct which, other than that stated in clause 1, falls short of the standard to which a reasonable man should conform in order to protect himself from harm.

■ There was evidence in this case that plaintiff did not know or have reason

3. This case is the appeal on remand of Koirtyohann v. Washington Plumbing and Heating Co., 471 S.W.2d 217 (Mo.1971), which is hereafter cited.

to know the possibility of danger, because he did not read all of the report and did not understand much of that which he read. Instead, plaintiff refrained from seeking advice or consultation with his own experts and the measure became whether such conduct was that of a reasonable man. The question is not whether Siteman knew or should have known the danger but, rather, not knowing by not having read or understood portions of the report did Siteman act as a prudent man in failing to consult with his experts or obtain assistance with those portions he did not read or understand. The instruction was therefore proper and a finding that Siteman knew or understood the danger would not be felicitous.

■ Plaintiffs contend that Harold Tepper, as Vice President of Siteman Organization, Inc., and project engineer, was agent for them; that since Tepper had read the report, his knowledge was imputed to plaintiffs. Consequently, plaintiffs argue it was error to require a finding that Siteman failed to read the report, since, through his agent he had done so. This argument is paradoxical and without merit, as plaintiffs have contended that it was their theory of the case whether a reasonable person (Siteman himself) having read a portion of the report would have known there was danger in contracting for excavation of the site without having read or understood the technical data. The question of negligence in this case was what Siteman personally did and personally knew through his failure to read the entire report before contract negotiations, as distinguished from the knowledge of an employee or agent with whom he did not consult. For the purposes of this case where the question is whether Siteman acted as a prudent man in failing to consult with his experts to gain knowledge of the report, the expert's or agent's knowledge cannot be imputed to the principal where the principal has not consulted with the expert or agent. The dichotomy of plaintiffs' argument leads to inconsistent and incompatible conclusions, for it improperly embraces the principles of agency for one purpose and rejects them for another. Meier v. Goebel-Reid Grocery Co., 20 S.W.2d 605, 608 (Mo.App.1929).

■ Plaintiffs' final point concerning Instruction No. 7 was that there was no evidence that Siteman's failure to read the entire report caused the damage sustained. Defendants have raised the defense of contributory negligence and are entitled to have the evidence considered in the light most favorable to the verdict and from defendant's standpoint. Wineinger v. Logan, 496 S.W.2d 275 (Mo.App.1973). The evidence in this case centered on the issue of whether Siteman should have known from the report that there would be the possibility of excavation problems and, thus, would have been circumspect in negotiating for an excavation contract. There was evidence to the effect that if Siteman did not read the entire report *and* did not understand it *and* did not obtain assistance in understanding, Siteman did not act as a prudent man prior to entering the contract which resulted in his having to pay the additional $191,480.19 which he claims to have been damaged. The jury could therefore conclude that the damages in the case were a result of Siteman's failure to read or understand portions of the report.

Plaintiffs' second major point is that the court erred in refusing to give plaintiffs' Instruction A and requiring plaintiffs instead to submit Instruction No. 2.[4] The

---

4. "INSTRUCTION NO. 2.
  "Your verdict must be for plaintiffs Alvin Siteman and Ruth Siteman if you believe:
  First, at all times mentioned in evidence the Siteman Organization, Inc., was acting for and on behalf of plaintiffs Alvin Siteman and Ruth Siteman, and

Second, ripping and/or blasting were required for the efficient removal of the hard gray shale beneath the limestone shelf at the Clayton Bank Building site, and
  Third, the narrative portion of defendants' soil and foundation investigation report of February 4, 1966, failed to state that rip-

**148**

only difference between the two instructions was the additional required finding in Instruction No. 2 that "ripping and/or blasting were required for the efficient removal of the hard gray shale beneath the limestone shelf at the Clayton Bank Building site." Instruction No. A, as initially offered by plaintiffs, was MAI 21.01 modified only to require a finding of agency. Plaintiffs contend that by the addition of the required finding, that ripping and/or blasting were required, the court has added an unnecessary ingredient and embellishment of MAI 21.01 and that such additional modification is in error.

▆▆ Plaintiffs concede that the finding of ripping and blasting was required to be made by a jury and was an essential element in their case. Such being the case, we do not find that the modification by the court was prejudicial error, for an MAI instruction should be modified where necessary to fairly submit the issue. V.A.M. R. Rule 70.01(e); Jurgeson v. Romine, *supra*.

▆▆ Plaintiffs' final point is that the trial court erred in giving separate converse instructions for each of the three defendants. The giving of more than one such converse instruction can be error. Scheele v. American Bakeries Co., 427 S. W.2d 361 (Mo.1968). However, plaintiffs made no special or general objection to the converse instructions at trial or in their motion for new trial, and, therefore, consideration of this point raised for the first time on this appeal is precluded unless it is to be considered under the plain error rule. Civil Rule 79.04 V.A.M.R. We do not consider the error to constitute a manifest injustice and therefore hold the plain error

ping and/or blasting might be required for the efficient removal of the hard gray shale beneath the limestone shelf at the Clayton Bank Building site, and
Fourth, defendants were thereby negligent, and

rule inapplicable. Zipp v. Gasen's Drug Stores, Inc., 449 S.W.2d 612 (Mo.1970).

The judgment is affirmed.

SMITH, P. J., and SIMEONE and KELLY, JJ., concur.

Fifth, as a direct result of such negligence, plaintiffs Alvin Siteman and Ruth Siteman sustained damage unless you believe plaintiffs Alvin Siteman and Ruth Siteman are not entitled to recover by reason of Instruction No. 7.
MAI 21.01 modified"