**Lexton OGLE et al., Plaintiffs-Appellants,**

v.

**TERMINAL RAILROAD ASSOCIATION
OF ST. LOUIS, Defendant-Respondent.**

**No. 36349.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

March 9, 1976.

Lawrence O. Willbrand, St. Louis, for plaintiffs-appellants.

Robertson, Ely & Wieland, Robert C. Ely, St. Louis, for defendant-respondent.

ALDEN A. STOCKARD, Special Judge.

This is an action in twenty-four separate counts by landowners for damages from flooding claimed to have been caused by defendant's failure to comply with the minimum requirements of § 389.660, RSMo 1969, pertaining to the construction of suitable openings in the roadbed of a railroad to drain and carry off water. The jury verdict, totaling $12,000.00, was set aside by the trial court and judgment was entered for defendant in accordance with its motion

for a directed verdict. In the alternative, the trial court ordered a new trial for the giving of Instruction No. 6 on the issue of damages. Plaintiffs have appealed. We reverse the judgment for defendant but affirm the order granting a new trial.

■ Among other things § 389.660 requires that every railroad company shall "cause to be constructed and maintained suitable openings across and through the right of way and roadbed of such railroad, * * * to connect with ditches, drain and watercourses, so as to afford sufficient outlet to drain and carry off the water, including surface water, along such railroad whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad; * * *." Each flooding of lands resulting from noncompliance with the above statute gives rise to a separate cause of action. *Hewitt v. Chicago, Burlington & Quincy Railroad Company*, 426 S.W.2d 27, 29 (Mo.1968).

■ Plaintiffs contend that the trial court erred in setting aside the jury verdict and entering judgment for defendant railroad. In determining this issue we consider the evidence favorable to plaintiffs as true and give them the benefit of every inference of fact which can reasonably be drawn therefrom. *Adler v. Laclede Gas Company*, 414 S.W.2d 304, 306 (Mo.1967).

During the trial of this case plaintiffs' expert witness, a civil engineer for the Metropolitan Sewer District, referred to an exhibit while testifying. The exhibit has not been filed with this court. Statements by this witness that "this part here is looking at the view of the creek from the side," the "creek flows this way," and the "railroad is right here," are meaningless to one reading the record on appeal. We shall, however, from the understandable evidence make a summary statement of the factual situation, and detail the pertinent evidence.

Defendant's railroad right of way crosses the East Fork of Black Creek near Hanley Road and Laclede Station Road. The culvert in defendant's embankment to permit water in the East Fork of Black Creek to pass through is ten feet wide across the bottom, it has vertical concrete walls six feet high, and there is an arch or "round half circle" at the top. Plaintiffs' home is nearby on West Point Drive a short distance upgrade from the culvert.

Lexton Ogle testified that the "creek," referring to the East Fork of Black Creek, was across the street from his house, and when "you get a hard rain you see the creek come up and you watch it and it just comes up and gets to the culvert and starts backing up this way right towards our house." He also testified that on several occasions the water overflowed from the creek into the basement of his house causing damage. Other evidence was to the effect that on twenty-four occasions their basement was flooded by water which during heavy rains backed up from the culvert. Plaintiffs' expert witness testified that in his opinion the reason the water backed up into plaintiffs' home was that "the culvert [was] too small," and that it was "only one-third the size it should be" in order to permit the flow of the water through the embankment.

Defendant's evidence was to the effect that if it enlarged the culvert that "would not alleviate the situation" because "the whole channel is inadequate from the Terminal Railroad on downstream."

Rather than attempt to paraphrase the ruling in *Smithpeter v. Wabash R. Co.*, 360 Mo. 835, 231 S.W.2d 135, 141–142 (1950), a leading case on the issues here presented, we will quote rather extensively from the opinion as follows:

We next consider defendant's basic contention as to its construction of Sec. 5222, * * *. Defendant argues that as plaintiffs failed to prove that "there was ditches, drains or watercourses south of the railroad embankment *sufficient to carry off the water*, including surface water, coming through defendant's embankment," that plaintiffs made no case for the jury. Defendant's brief states its position in these words: " * * * the

duty of the railroad under Sec. 5222 is limited to passing only that water through the embankment which can be carried off by a ditch, drain or water-course below."

We do not agree that a railroad's duty is so limited under that statute. Analysis of the statute discloses nothing therein which limits the railroad's duty to passing through its embankment only such water as can be carried off below. In Sec. 5222, we find neither words nor context which warrants any such construction. The statutory duty is that the railroad must construct and maintain "suitable open-ings" through its embankment, to con-nect with watercourses, "so as to afford sufficient *outlet*" (through its embank-ment) i.e., to permit all water (including flood water) to get through its embank-ment to the lower side, "whenever the draining of such water has been obstruct-ed or rendered necessary by the construc-tion of such railroad." *Jones v. Chicago, B. & Q. R. Co.*, supra. There is not one word in the statute limiting the water the railroad must let through its embank-ment to such water as can be carried off within the banks of the drain, ditch or watercourse below the railroad. Nor is there anything in the statute intimating the railroad's duty is discharged if the water above the embankment and re-quired to be let through cannot be carried off within the banks of the existing "ditch, drain or watercourse." The stat-ute does not require the watercourse be-low the bridge be "sufficient" to carry away water drained through the embank-ment.

■ A jury reasonably could find that the culvert did not provide a sufficient out-let through the railroad embankment to permit all the water during heavy rains to get through the embankment to the lower side. There was a watercourse extending downstream from the embankment, and in view of the holding in the *Smithpeter* case the inadequacy of that watercourse does not excuse noncompliance with the statute.

The trial court improperly entered judg-ment for defendant.

■ At the request of plaintiffs, Instruc-tion No. 6 in the form of MAI 4.01 was given. Plaintiffs concede on this appeal that the proper instruction was MAI 4.02, but they attempt to demonstrate that no prejudicial error resulted.

Rule 70.01(c) provides that "The giving of an instruction in violation of the provisions of this rule shall constitute error, its preju-dicial effect to be judicially determined." In *Murphy v. Land*, 420 S.W.2d 505, 507 (Mo.1967), the Supreme Court expressed it-self as follows: "All deviations from the straight and narrow path prescribed in MAI will be presumed prejudicially erroneous unless it is made perfectly clear that no prejudice resulted. The requirements of MAI are mandatory. The burden of estab-lishing nonprejudice is on the proponent of the instruction. That it is the policy of this Court to require strict compliance with all the requirements of MAI is made clear in *Brown v. St. Louis Public Service Co.*, Mo., 421 S.W.2d 255 (Mo. banc 1967)."

Plaintiffs argue that "the result would have been identical" if MAI 4.02 had been given. However, that is pure speculation. Instruction No. 6, in the form of MAI 4.01, conferred carte blanche authority for the jury to have included many items of dam-age referred to in the evidence such as loss of work by Mr. Ogle and the cost of remov-ing odors, replacing motors in the furnace, and replacing tile on the floors, to mention only a few. Evidence pertaining to such items, except the loss of work item, was relevant to the issue of the alleged dimin-ished market value of plaintiffs' property, but damages as such for those items were not recoverable in this action.

■ In this case there was a deviation from an MAI instruction, which did not need modification, in that an inapplicable instruction was given and plaintiffs have not made it "perfectly clear" that no preju-dice could have resulted. Also, this court will be more liberal in upholding the trial

court's action in sustaining a motion for new trial than in denying it. *Stewart v. City of Marshfield*, 431 S.W.2d 819 (Mo. App.1968).

Appellants suggest that in the event of a new trial it should be on the issue of damages only. Apparently the trial court did not consider this appropriate because it did not so limit its order, and generally speaking in a situation such as we have here it is a matter of discretion on the part of the trial court. *Panjwani v. Star Service & Petroleum Company*, 395 S.W.2d 129 (Mo. 1965). In addition, proof of damages and of liability are closely related and difficult to separate completely, and our examination of the record shows that there is much to be desired concerning the proof of causation as to some counts. Our reversal of the judgment for defendant as to all counts is not an approval of the proof as to each count. Under these circumstances we direct a new trial on all issues.

The judgment for the defendant entered by the trial court is reversed, and the order, entered in the alternative, granting a new trial is affirmed and the cause remanded.

SMITH, C. J., and NORWIN D. HOUSER, Special Judge, concur.