**Robert D. HAVRILLA and Bonnie E. Havrilla, Plaintiffs-Respondents,**

v.

**MILLERS MUTUAL INSURANCE ASSOCIATION OF ILLINOIS, Defendant-Appellant.**

**No. 50693.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 23, 1986.

Motion for Rehearing and/or Transfer
Denied Feb. 11, 1987.

Application to Transfer Denied
March 17, 1987.

Donald W. Bird, St. Louis, for plaintiffs-respondents.

Donald R. Morin, Clayton, for defendant-appellant.

SIMON, Judge.

Respondents, Robert D. Havrilla and Bonnie D. Havrilla (Havrillas), filed this action against appellant, Millers Mutual Insurance Association of Illinois (Millers), in the Circuit Court of St. Louis County, to recover the value of a diamond ring insured by Millers. The jury returned a verdict in favor of Millers. The trial court granted Havrillas' motion for new trial, but did not specify the ground or grounds for its ruling in its order. Millers appeals the granting of the new trial and in accordance with Rule 84.05(b), Millers requested that Havrillas file the original brief.

Generally, an appellate court will be more liberal in upholding the action of a trial court in sustaining a motion for new trial than in denying it. However, such action can only be affirmed if there was error prejudicial to the party moving for a new trial. *Randolf v. U.S.F. & G. Companies*, 626 S.W.2d 418, 420 (Mo.App.1981). When the trial court fails to specify the ground or grounds for ordering a new trial, we may not presume that the new trial was granted on discretionary grounds. Rule 84.05(c); *Brock v. Steward*, 519 S.W.2d 365 (Mo.App.1975). Instead, the trial court's

granting of the new trial motion is presumed to be erroneous and the burden of supporting the trial court's action is placed on the respondent. Rule 84.05(b); *Haas Baking Co. v. Luzio*, 512 S.W.2d 428, 430 (Mo.App.1974). In meeting this burden, the respondent is confined to the errors specified in their motion for new trial and their brief. *Brock*, 519 S.W.2d at 368; Rule 84.05(b).

Havrillas advance three points of error to support the trial court's grant of their motion for new trial. They argue that the trial court erred: (1) in instructing the jury with respect to Millers' burden of proof on its affirmative defense; (2) in entering judgment on the jury's verdict because the verdict lacked evidentiary support; and (3) in submitting Millers' affirmative defense instruction because there was no evidence to support the instruction. We affirm.

On January 20, 1983 Havrillas' home was burglarized and various items of personal property were stolen, including a 3.54 carat diamond ring with a 5 millimeter gold band. At the time of the burglary, Havrillas were insured under a homeowner's insurance policy issued by Millers. Attached to the policy was a personal property "floater" on which a special premium was paid to cover the ring.

On January 24, 1983 Havrillas made a claim for their loss due to the theft and it was assigned to Millers claim representative, Frank Luitjohan. Luitjohan and Havrillas met to discuss the loss and an understanding was reached with regard to the payment for all of the items taken or damaged except for the diamond ring.

Mr. Havrilla purchased the ring on January 8, 1980 from Robert M. Brinkman & Associates as a present for his wife. He paid $18,500 for the ring; $14,500 in cash and $4,000 credit for a trade-in. As Mr. Havrilla had enjoyed a long relationship with Mr. Brinkman, this amount was just over the wholesale cost of the ring. At the time of purchase, Mr. Havrilla asked Mr. Brinkman for an appraisal of the retail replacement value of the ring. Mr. Brink-

man appraised the ring's retail cost at $28,820 as of January 9, 1980.

Mr. Havrilla forwarded the Brinkman appraisal, along with a photograph of the ring, to Millers. He informed Millers that he wanted to insure the ring for the full amount of the appraisal. Millers agreed. However, under the terms of the insurance policy issued to the Havrillas, Millers was only obligated to pay, if the ring was lost or stolen, the lesser of: (A) the amount of insurance, (B) the actual cash value of the ring on the date of loss, or (C) its replacement cost.

The Havrillas made a claim for the amount of the insured value of the ring; $28,820. However, after obtaining its own replacement estimates, Millers only paid $14,250 to Harvillas on their claim. Havrillas filed this action for their loss in excess of the amount paid and sought the insured value of the ring and prayed that they be permitted to recover "vexatious refusal to pay" penalties pursuant to § 375.420 RSMo (1978). Millers answered, asserting an affirmative defense based on the policy provision that obligated Millers to pay the lesser of the insured value, the actual value, or the replacement cost. Millers claimed that the $14,250 represented a sum at least equal to the actual cash value or reasonable market value of the ring.

The trial court sustained Havrillas' motion in limine to bar testimony of Millers' undisclosed expert witnesses. Havrillas had submitted an interrogatory to Millers requesting that it identify each person whom it had contacted for an opinion as to the ring's value, and each person whom it expected to call as an expert witness at trial to establish value. Millers answered "undetermined at this time" and never supplemented its answer. The trial court found that Millers had not complied with Rule 56.01(c), and held that Millers could not introduce expert testimony on the issue of the ring's value.

Havrillas called three witnesses who testified as to the value of the ring. Mr. Havrilla was of the opinion that the ring's value at the time of the burglary was $35,000 to $37,000. Mr. Brinkman, the jeweler who sold the ring, testified that he could have replaced the ring with one substantially similar for $28,820. Gustave Saettele, a wholesale diamond jeweler, testified that, with difficulty, he could have located a substantially similar diamond and he would have sold it wholesale for $27,000 to $28,000, or retail for $30,000 to $35,000.

Although the trial court ruled that Millers could not put on expert testimony as to the value of the ring, the court did allow such testimony to be received relative to Millers' good faith on the "vexatious refusal to pay" claim. The trial court instructed the jury, prior to such testimony, that it could only consider such testimony on the issue of "vexatious refusal to pay" and that the jury was not to consider the testimony for the purpose of determining the cash value or replacement value of the ring.

Millers called two witnesses who had given it appraisals for the lost ring; apparently to establish its good faith. Ron Canada, a jeweler, testified that he could have replaced the ring. During cross-examination, Havrillas' attorney questioned Canada about the value of the diamond. Based on this, the trial court ruled that Havrillas' objection regarding Canada's opinion as to the value of the ring had been waived. On re-direct, Millers' counsel was permitted to ask Canada the value he placed on the ring at the time of the burglary. Canada testified that he could have sold a nearly identical ring for $20,400. Donald Imgarten, a jeweler, testified that he had given Millers an appraisal for the lost ring. He further testified that he informed Millers that he could have replaced the ring for $14,000.

At the instruction conference, Havrillas submitted Instruction No. 5, which is substantially MAI 3.01 [1981 revision] (3rd ed. 1983), and the instruction, as ultimately given, charged the jury that:

In these instructions, you are told that your verdict depends on whether or not you believe certain propositions of fact submitted to you. The burden of causing you to believe a proposition of fact is upon the party whose claim depends upon that proposition. In determining

whether or not you believe any such proposition, you must consider only the evidence and the reasonable inferences derived from the evidence. If the evidence in the case does not cause you to believe a particular proposition submitted, then you cannot return a verdict requiring belief of that proposition.

Millers submitted Instruction No. 7, its affirmative defense instruction, charging:

Your verdict must be for defendant if you believe:

First, defendant offered to pay plaintiffs the amount for which you could reasonably be expected to replace the ring with one substantially identical to it, and

Second, the amount offered as described in Paragraph First was the lesser of:

(a) The actual cash value of the property at the time of loss or damage, or

(b) The amount for which you could reasonably be expected to replace the article with one substantially identical to the article lost, or

(c) The amount of insurance.

Havrillas' first point on appeal is that the trial court prejudicially erred in failing to include the mandatory phrase "or defense" after the word claim in the second sentence of the burden of proof instruction respecting Millers' burden of proof on its affirmative defense instruction. This point was clearly set forth in Paragraph 8 of Havrillas' motion for a new trial.

■ It is well settled that MAI 3.01 is mandatory and is to be used in every case, except where another burden of proof instruction has been provided. MAI 3.01 Notes on Use 1. The inclusion of the phrase "or defense" within MAI 3.01 is likewise mandatory "whenever an affirmative defense is submitted." MAI 3.01 Notes on Use 1; *Leonard v. Hodge,* 654 S.W.2d 165 (Mo.App.1983). It is obvious that the failure to include the mandatory phrase is error. *Id.* It is our duty to determine judicially the prejudicial effect of the omission of the mandatory phrase "or defense" from the instruction. Rule 70.-02(c); *Leonard,* 654 S.W.2d at 166. In making this determination we note "that a deviation from MAI is not only error, it is

presumptively prejudicial error." *Means v. Sears, Roebuck & Co.,* 550 S.W.2d 780, 786 (Mo. banc 1977). Where there is a deviation from MAI, the party asserting its harmlessness has the burden of so demonstrating. *Leonard,* 654 S.W.2d at 166.

Millers does not dispute that the trial court erred but argues that substantial prejudice did not result from the omission of the "or defense" from the instruction. In support, Millers relies on *Leonard, id.* and *Adams v. DeBusk,* 666 S.W.2d 878 (Mo.App.1984).

The *Leonard* court was called upon to decide the prejudice arising from a MAI 3.01 burden of proof instruction that omitted the mandated phrase "or defense" when an affirmative defense instruction was also submitted to the jury. *Leonard* involved a suit for damages for injuries sustained by Cecil Leonard in a fall into an unguarded stairwell in the defendant's living room. Leonard's contributory negligence was raised and submitted to the jury as an affirmative defense. The jury's verdict was in favor of the defendant. However, the trial court granted a new trial on the ground that it had erroneously omitted the phrase "or defense" in the MAI 3.01 burden of proof instruction.

A divided court in *Leonard* reversed the order granting the new trial holding that the MAI deviation was harmless error. Here, as in *Leonard,* the erroneous portion of the instruction given read: "[T]he burden of causing you to believe a portion of fact is upon the party whose claim [omitted mandatory language: 'or defense'] depends upon that proposition." The majority in *Leonard* reasoned:

If the jury reads that sentence to refer only to plaintiffs' claims, then they are, at the least confused about the instruction's silence upon the burden of proof on the contributory-negligence issue, and the omission of the words 'or defense' would be prejudicial to plaintiffs. But there is no reason to suppose that the jury so understood the sentence. The jury may be presumed to have understood the word 'claim' in its usual and ordinary meaning.

The word 'claim' is no term of art. It has no technical meaning. It is not de-

fined in the instructions. In everyday parlance it is used to mean 'contention' or 'argument.' Judicial opinions and other formal writings frequently use it with that meaning. We do no violence to the language if we assume that the jury understood it in the same sense. The defendants *claimed* that Cecil was contributorily negligent. That was their *claim*. The instruction told the jury that defendants had the burden to prove their claim.

If the term 'claim' did give the jury pause, the fact that the sentence refers both to the plaintiffs' claims (for damages) and to defendant's claim (of contributory negligence) is borne out by the fact that if refers to 'the *party* whose claim depends upon that proposition.' Plainly implied from the use of the term 'party' is the fact that either the plaintiff or the defendant might have, or might make, a claim. It is not only the plaintiffs' claims that are intended here. It is the claim of a *party*, including both the plaintiff and the defendant. So that 'jury of ordinarily intelligent laymen ... with common sense and average understanding of the English language' would understand it. The burden-of-proof instruction given here, though it omits 'or defense,' plainly and unmistakably tells the jury that defendants have the burden to prove the plaintiff's contributory negligence.

654 S.W.2d at 167. (citation omitted).

In *Adams v. DeBusk*, 666 S.W.2d at 880, the *Leonard* holding was followed. *Adams*, like *Leonard*, involved a negligence action. The plaintiffs sought money damages in a two count petition for injuries sustained by Michael Adams when he lacerated his finger on the defendants' metal shed. As in *Leonard*, the defendants raised the affirmative defense of Adams' contributory negligence. The trial court, on its own initiative, gave MAI 3.01. However, the trial court failed to include the mandatory phrase "or defense" within the instruction even though two contributory negligence instructions were given to the jury. On appeal, the court gave cursory treatment to plaintiff's claim that the omission of the mandatory phrase required re-

versal. Relying on *Leonard*, the court held that the omission was harmless.

*Leonard* and *Adams* are factually distinguishable from the case sub judice. This is not a tort action and contributory negligence has not been raised as an affirmative defense. Here, we are concerned with an action on a contract of insurance. Millers does not allege any breach by the Harvillas and does not question the validity of the policy. Its defense is simply that it paid Harvillas all that it was required to pay under the policy. Contributory negligence is more in the nature of a claim because it alleges some violative conduct on the part of the plaintiff. In that sense, it is an offensive assertion. Not so here. Millers' defense is merely a set of facts which, if believed, would absolve it from further liability under the policy. There is nothing to this defense that connotes a claim.

To apply the *Leonard* holding in this factual situation would render the MAI 3.01 Notes on Use 1 a nullity and constitute a defacto alteration of the instruction without express Supreme Court approval. Notes on Use are to be religiously followed, *Sands v. R.G. McKelvey Building Co.*, 571 S.W.2d 726, 730 (Mo.App.1978), and the failure to follow is almost invariably reversible error. *Riley v. Bi-State Transit System*, 459 S.W.2d 753, 757 (Mo. App.1970). To presume that the jury understood that Millers had the burden of proof on its defense, is to presume away the value of the Notes on Use.

■ Harvillas were clearly prejudiced by the trial court's failure to instruct the jury as to Millers' burden on its affirmative defense. Thus, Harvillas have provided sufficient support for the trial court's grant of the new trial motion and therefore we shall not consider the remaining points on appeal.

Judgment affirmed.

GARY M. GAERTNER, P.J., and STEPHAN, J., concur.