## LINCOLN UNIVERSITY v. GEORGE E. HACK-MANN, State Auditor.

In Banc, July 18, 1922.

1. **APPROPRIATION OF PUBLIC MONEY: Rejection of Word, Unappropriated: Out of Special Fund.** In construing a legislative act words may be inserted or substituted when such is necessary to effect the manifest intention of its framers; and this rule is applicable where the literal meaning is absurd, or, if given effect, would work injustice, or where the word was inserted through inadvertence. And guided by this rule, *Held*, that the word "unappropriated" in the clause of Section 8 of the Act of 1921 en-

Lincoln University v. Hackmann.

larging Lincoln Institute into Lincoln University, declaring that "there is hereby appropriated from any unappropriated portion of the general school funds the sum of five hundred thousand dollars," was used inadvertently and should be rejected. But if said word "unappropriated" be rejected it still remains unmistakably true that the appropriation is made out of the public school funds. and if not payable out of that fund it must fail.

*Held*, by GRAVES, J., with whom WALKER, J., concurs, that there can be no such thing as "an unappropriated" public school fund, and therefore the above holding is unnecessary.

2. ————: Public School Fund: To Lincoln University. The income from the Public School Fund, and the moneys of the ordinary revenues of the State set apart for the support of the public schools, are by the Constitution devoted exclusively to the support of public schools and the State University. The appropriation of five hundred thousand dollars "from any unappropriated portion of the general school funds" made by Section 8 of the Act of 1921 changing the name of Lincoln Institute to Lincoln University and authorizing a course of training for negroes equal to the standard furnished by the State University, was invalid and fails. The Legislature, in view of the specific declarations of the Constitution, has no power to appropriate the income of the Public School Fund, or the money set apart by law out of the ordinary revenues for the support of the public schools, to any use or purpose except to the establishment and maintenance of the free public schools in the various counties and the State University. An appropriation for Lincoln University can only be made out of the general revenue.

## Mandamus.

PEREMPTORY WRIT DENIED.

*George V. Berry* for relator.

(1) There is only one fund from the principal of which an appropriation for any public school purposes can be paid, and that is that part of the general revenue set apart by the General Assembly for school purposes. The name by which it is called is not material. The appropriation from which payment of the requisition involved herein is sought is any unappropriated portion

of the general school funds. On the date the requisition was drawn and presented there was a balance in that part of the general revenue set apart for public school purposes of $3,874,914.20. The total appropriations made against this fund, except that to Lincoln University, were $1,047,659.64, leaving a balance of $2,827,254.56. The above appropriations, together with that of $500,000, to Lincoln University, constitute all the appropriations made against this fund, for the reason that Section 11179, Revised Statutes 1919, is not an appropriation, but a direction to the State Superintendent of Public Schools as to how he shall distribute and apportion the balance of this fund not already appropriated. This distribution had not been made on the date the requisition in this case was drawn and presented, nor will it be made until after the first day of August, 1922. Therefore, if the court finds that the act intended that this appropriation of five hundred thousand dollars was intended to be taken from the one-third of the general revenue set apart as the public school fund, by whatever named called, then it should further find that on the date this requisition was drawn and presented there was in this fund unappropriated ample moneys to pay it. (2) It is unnecessary to call this court's attention to its decisions holding that wherever possible that construction should be given a statute which most nearly squares with equity and justice, but we do wish to say that there have been few cases before this Honorable Court in which the appeal for equity, justice and good conscience equaled this. Not only would a denial of relief hamper this institution in a most worthy work and postpone, at least, greater educational opportunities to worthy and ambitious members of the negro race, but would work a great hardship on third parties, who acting in good faith, and with whom the board of curators dealt in the utmost good faith, are through no fault of their own or that of the board, placed in a most embarrassing situation, and to whom an ad-

verse decision would mean a heavy loss financially and otherwise.

*Jesse W. Barrett,* Attorney-General, and *Merrill E. Otis,* Assistant Attorney-General, for respondent.

(1) If the language of the act appropriating $500,-000 to Lincoln University is to be literally construed, then there are no funds available for the payment of the appropriation. (2) The appropriation to Lincoln University or any part thereof can be paid only if the words in the apropriation act "from any unappropriated portion of the general school funds" are read as if they were "from any portion of the general school funds not specifically appropriated."

HIGBEE, J.—This is an original action in this court by the relator to require the State Auditor to honor a requisition for the sum of $4,287.40 and to draw a warrant upon the State Treasury for that sum in favor of the treasurer of relator. The respondent entered his appearance, waived the issuance of the alternative writ and filed his return.

It will not be necessary to refer to the pleadings.

An Act of the General Assembly, approved April 15, 1921, Laws 1921, page 86, repealed Article XVII-a, Chapter 102, Revised Statutes 1919, and enacted a new article, in lieu thereof, providing for the higher education of the negro race. The act changed the name of Lincoln Institute to Lincoln University, vested the control thereof in a board of curators and authorized the board to re-organize the institution so that it shall afford the negroes of the State opportunity for training up to the standard furnished at the State University of Missouri, to purchase additional land and erect necessary additional buildings and conferred upon the board of curators the same powers prescribed by statute for the board of curators of the State University, except as stated in the act. Section 8 reads:

"To enable the board of curators to carry out the purposes of this act, as stated specifically in Section 3, and subject to the provisions of Section 6 of the same, there is hereby appropriated from any unappropriated portion of the general school funds the sum of five hundred thousand dollars.''

Relator's statement proceeds:

"Upon being notified by the State Auditor that this money was available for the purposes mentioned in Section 3, the board of curators employed E. C. Janssen, an architect, to draw plans for and superintend the construction of certain new buildings to be erected on the grounds of the university. On April 26, 1922, having become indebted to E. C. Janssen in the sum of $4,287.40, and the same being due, the board issued a requisition upon the respondent directing him to issue a warrant upon the State Treasury for that amount in favor of A. A. Speer, treasurer of Lincoln University, and charge the same against the $500,000 appropriated by the act for this purpose. This the respondent refused to do, contending that no portion of the public school funds or moneys was unappropriated at that time, and, therefore, there were no funds out of which to pay this requisition.''

By an act with an emergency clause, approved February 21, 1921, Laws 1921, page 62, one-third of the ordinary revenue paid into the State Treasury for the fiscal years from July 1, 1920, to June 30, 1922, was appropriated to the support of the public schools of the State, to be apportioned according to law. By Section 11179, Revised Statutes 1919, this is required to be done annually by the State Superintendent before August 15. It is admitted the apportionment has not been made.

The learned Attorney-General states his views as follows:

"As respondent understands relator's position, it is that the Legislature intended that the $500,000 appropriated to Lincoln University should be paid, not out

of any unappropriated part of the public school funds (since it is clear that all of the public school funds had been appropriated to the support of the public schools), but out of the funds theretofore appropriated from the public treasury, but not yet actually apportioned to the various counties as required by Section 11179, Revised Statutes 1919. This view presents two questions for consideration; first, may the words 'from any unappropriated portion of the general school funds' be construed to mean 'from any portion of the general school funds not specifically appropriated; and second, did the Legislature have the authority, having already appropriated all of the one-third part of the ordinary revenue set apart for the support of the public schools, thereafter to again appropriate a portion of such revenue to a particular educational institution.

"With respect to the first of the two questions mentioned respondent is inclined to agree with the relator that the Legislature meant by the language used that the appropriation to Lincoln University should be taken from the one-third part of the ordinary revenue of the State set apart for the support of public schools, which was not otherwise specifically appropriated by Sections 66 to 70, inclusive, appearing in the Laws of Missouri for 1921 at pages 29 and 30. If the Legislature did not have that intention, then it must be clear that the appropriation was intended to be ineffective, against which last construction every possible presumption would certainly exist. The appropriation is intelligible if it was intended to be paid out of the balance remaining in the one-third part of the ordinary revenue set aside for public schools, after the deduction therefrom of the five specific appropriations which total $1,047,659.64, leaving a balance of several million dollars. Otherwise the appropriation is a nullity.

"With respect to the second question, there would seem to be little doubt that the Legislature has the authority to designate to what particular purposes any

portion of the one-third part of the ordinary revenue shall be applied, provided those purposes are germane to the support of public schools. Assuming, therefore, that Lincoln University is a part of the public school system of the State, it would seem that the Legislature has the same right to direct the application of a portion of the public school funds to its support that it had to direct the application of a portion of the same fund to the support of rural high schools, as in Section 66, Laws 1921, page 29, or to the support of teachers training courses in high schools, as in Section 67, Laws 1921, or to any other of the specific purposes referred to in Sections 66 to 70, inclusive, Laws 1921, pages 29 and 30.''

By the act in question a great educational institution was organized as a university, separate and apart from the State University, for the purpose of affording the negroes of our State the means and facilities of higher education. The board of curators was clothed with the powers conferred by statute on the curators of our State University, and authorized to purchase land and erect additional buildings, etc. These duties are affected with a public trust. The statute in this respect may be said to be mandatory in its nature in order that its great beneficent purposes may be carried into effect and the State realize the benefits of extending to the negroes of our State the education, culture and training afforded by the University of Missouri.

I. As to the first question suggested we have no doubt that the word ''unappropriated'' was used inadvertently and should be rejected. We have held that in construing an act of the Legislature, words

Inadvertent Word.

may be inserted or substituted when necessary to effect the manifest intention of the framers thereof. [State ex rel. v. Sheehan, 269 Mo. 421, 427, 190 S. W. 864; St. Louis v. Murta, 222 S. W. 430; State v. Gmelich, 208 Mo. 152, 161.]

''Especially is this rule applicable where the literal meaning is absurd, or, if given effect, would work in-

justice, or where the provision was inserted through inadvertence." [36 Cyc. 1108.]

II. "The great fundamental rule in construing statutes is to ascertain and give effect to the intention of the Legislature. This intention, however, must be the intention as expressed in the statute, and where the meaning of the language used is plain, it must be given effect by the courts, or they would be assuming legislative authority." [36 Cyc. 1106.]

If the word "unappropriated" be rejected, still Section 8 plainly and unmistakably makes the appropriation out of the public school fund.

Appropriation: Out of Special Fund.

We cannot, by construction or interpretation, modify or alter the explicit language of the statute so as to make the appropriation out of the general revenue fund in the State Treasury without usurping the functions of the Legislature. As the statute is written, the appropriation must be paid out of the Public School Fund, otherwise it must fail.

III. A brief reference to the pertinent constitutional provisions will demonstrate the invalidity of this appropriation. Section 1 of Article XI of our Constitution ordains that the General Assembly shall

Public School Moneys: Constitutional Regulations.

establish and maintain free public schools for the gratuitous instruction of all persons in the State between the ages of six and twenty years. Section 2 provides that the income of all the funds provided by the State for the support of free public schools shall be paid annually to the several county treasurers to be disbursed according to law. Section 3: Separate free public schools shall be established for the education of children of African descent. Section 5: The General Assembly shall, whenever the public school fund will permit and the actual necessity of the same may require, aid and maintain the State University now established, with its present de-

partments.  Section 6 enumerates the various sources
from which the Public School Fund of the State is
derived, which shall be paid into the State Treasury and
securely invested and sacredly preserved as a public
school fund; the annual income of which fund, together
with so much of the ordinary revenue of the State as
may be by law set apart for that purpose, shall be
faithfully appropriated for establishing and maintaining
the free public schools and the State University in this
article provided for, and for no other uses or purposes
whatsoever.  Section 7 provides: . . . "but in no
case shall there be set apart less than twenty-five per-
cent of the state revenue, exclusive of the interest and
sinking fund, to be applied annually to the support of
the public schools."

The scheme ordained by the Constitution is the or-
ganization and maintenance of free public schools for the
gratuitous instruction of all persons in this State be-
tween the ages of six and twenty years; the income of
all the funds provided by the State for the support of
free public schools shall be paid annually to the several
county treasurers to be disbursed according to law; the
annual income of the public school fund, with not less
than twenty-five per cent of the ordinary revenue, shall
be faithfully appropriated for establishing and main-
taining the free public schools and the State University,
and for no other uses or purposes whatsoever.

It is thus seen that the income from the Public
School Fund and the money required to be set apart
from the ordinary revenue of the State must be devoted
exclusively to the support of the public schools.  To this
there is only one exception, the State University.  So
that when the Legislature set apart one-third of the
ordinary revenue of the State for the support of the
public schools, that fund, together with the annual in-
come from the public school fund, was devoted to the
purpose designated by the Constitution and the Legis-
lature was without power to divert or appropriate any

portion thereof to any use or purpose other than establishing and maintaining the free public schools and the State University. It must be apportioned and paid solely to the several county treasurers, except so much thereof as may be apportioned to the State University. It is apparent that the Legislature could not apportion any of this fund to the support of the State University were it not for the exception incorporated into the Constitution, for the obvious reason that it is not a part of the free public school system of the State ordained by our organic law.

IV. The General Assembly established a college of agriculture at Columbia and a School of Mines and Metallurgy at Rolla, as distinct departments of the University. [Laws 1909, p. 884.] This act was sustained for the reason that the Constitution contains no limitation on the power of the Legislature to establish new or additional departments in connection with the University. [State ex rel. v. Board of Curators, 268 Mo. 598, 610.]

Distinct Institution.

Lincoln Institute was a separate, independent institution for the education of the negro race. It was constituted in the year 1870 a normal school for the purpose of training colored teachers for public schools. [Laws 1870, p. 136.] An academic department was established by Act of March 19, 1887 (R. S. 1879, sec. 7176). It was no part of the free public school system of our State for the education of persons between the ages of six and twenty years. It was supported by appropriations out of the State Treasury. (Laws 1921, p. 65). The Legislature might have established it as a department of the State University, in which case it could share in appropriations out of the public school fund as a department of the University. But the Legislature by the act in question made it a separate and distinct institution. In that character it is no more entitled to an appropriation from the public school fund of the State than is one of our state teachers colleges. The ap-

propriation should have been made out of the general revenue in the State Treasury.

It results that the Legislature was without power to make the appropriation in question and its action in the premises is in contravention of the express mandatory provisions of our Constitution, cited supra. The writ must accordingly be denied. *David E. Blair* and *Walker, JJ.,* concur; *Graves, J.,* concurs in separate opinion in which *Walker, J.,* also concurs; *James T. Blair, C. J.,* and *Elder, J.,* concur in result; *Woodson, J.,* absent.

GRAVES, J. (concurring).—I concur in this opinion. Of course there are public school funds which are appropriated by the acts (constitutional or statutory) which created them. Then there is the constitutional provision that a certain portion of the ordinary revenue funds (not less than twenty-five per cent) shall be set aside for the public school fund, but this does not become a public school fund until after it is appropriated. When it is appropriated its channel is fixed, and what is left is general revenue fund. The mere fact that the Legislature may go beyond twenty-five per cent of the ordinary revenue fund for a school fund does not change the situation. There can be no such a thing as an *unappropriated* public school fund. This last view renders the first paragraph of the opinion unnecessary. *Walker, J.,* also concurs in these views.