ROGERS FOUNDRY COMPANY, A CORPORATION, RESPONDENT, v. WILBUR N. SQUIRES ET AL., RESPONDENTS, CLEAR-PEACHER MINING COMPANY, APPELLANT.*

In the Springfield Court of Appeals. Opinion filed July 6, 1927.

*Corpus Juris-Cyc. References: Mechanics' Liens, 40CJ, p. 51, n. 60; Mines and Minerals, 40 CJ, p. 1038, n. 7; p. 1179, n. 22 New; Owner, 29Cyc, p. 1550, n. 15; Statutes, 36Cyc, p. 1106, n. 29.

*John J. Wolfe* for appellant.

*Mercer Arnold, Grayston & Grayston* and *R. A. Pearson* for respondents.

BRADLEY, J.—This is an action under the statute, section 7220, Revised Statutes 1919, to establish a lien for material furnished. From the judgment rendered the Clear-Peacher Mining Company appealed. After the petition was filed other lien claimants intervened and filed pleadings so that when the cause went to trial three lien claims were involved. D. M. Page et al. owned the fee in a certain described forty acres of mining land in Jasper county. The Clear-Peacher Mining Company, a copartnership composed of Fletcher Clear, Roy Peacher and Charles M. Rountree, held a mining lease on this land, which lease expired in 1933. August 28, 1924, the Clear-Peacher Mining Company entered into a license contract with Wilbur N. Squires, as a trustee for others, whereby Squires was to enter upon the land and perform certain mining operations thereon, and

upon the completion of the work required, Squires was to have an option, for a time specified, to lease the land from the Clear-Peacher Mining Company for the remainder of their term. At the time of the license contract the Clear-Peacher Mining Company had a mining plant and considerable property upon the land. Under the license contract Squires entered upon the land and proceeded with the operations required of him. While proceeding under this contract Squires, trading as the S. & M. Mining Company, purchased the materials for which the different liens are sought. During the time Squires operated the plant he placed on the premises, using therefor the materials for which liens are claimed the following: One hopper and derrick east of mill including hoister, a tramway, a hoister in derrick west of mill, one forty-four by one fifty-six revolving screen, two large lift pumps, sludge tables, twelve tubs, oil burning system in engine room, one four-inch steam pump with belts and fittings, one new jack hammer, a forty by thirty-six rougher jig and a forty by thirty-two cleaner jig with irons complete, one sand jig, one dummy elevator including belts, cables and lumber, one two-inch pump in engine room.

Judgment was rendered in favor of plaintiff and against Squires as trustee and individually for $452.80 and this amount was adjudged a lien upon the above-mentioned property. Judgment was given also in favor of the McNeal Machinery Company and against Squires as trustee and individually for $1594.25, and this judgment, to the amount of $1220.93, was declared a lien upon the same property. Also judgment was awarded in favor of the Joplin Cement Company and against Squires as trustee and individually for $46.40, and this judgment was declared a lien upon the same property. Neither of the liens adjudged was given preference as to priority, but all were adjudged equal in that respect. It was ordered that the property, upon which the liens were adjudged, be sold and the proceeds distributed (1) to the payment of costs; (2) to the payment of liens *pro rata;* (3) and the balance, if any, to the Clear-Peacher Mining Company.

Fletcher Clear, individually, George W. Moore and Frank Sharp were discharged and judgment given in their favor. It was also found that Fletcher Clear had no connection with the S. & M. Mining Company, hence it will not be necessary to say more of this feature.

Hereinafter we shall refer to the lien claimants as respondents, and to the Clear-Peacher Mining Company as appellants. Also we shall refer to the separate liens adjudged as the lien. It is not seriously contended that respondents are not entitled to the lien, but it is vigorously urged that the lien should have been adjudged inferior to the rights of appellants.

While Squires was operating the mining plant under the license contract of August 28, 1924, he became indebted to appellants in a sum alleged to be $2500 for royalties. May 8, 1925, Squires by an instrument of writing denominated an "assignment of interest in chattels to secure payments of royalty" did "sell, assign, transfer and convey" to appellants all of his "right, title and interest" in and to certain described property at the mining plant, to-wit: "Three Samson Gear Hoists, two ten-inch lift pumps, one five-inch steam pump, one one hundred fifty-gallon oil tank, one dummy elevator and equipment, one twenty-five horse power steam engine, attached to pump, all iron tracking, all derricks, tramways machinery and equipment, and other improvements, constructed and placed on said mining lease by said Squires, under terms of said lease, and all mining tools, picks, shovels, drill steel, and other utensils now located on said lease."

This assignment provided that the legal title to and ownership in said described property remain in appellants until Squires paid the $2500 for royalties, and when such payment was made in full the assignment was to be void.

The lien rights of respondents attached prior to the assignment mentioned, hence the assignment cannot be of consequence here. Appellants, however, in their reply brief expressly disclaim the assignment as the basis of their claim to priority, but say that they rely upon the statute, section 7220, Revised Statutes 1919, and that the assignment is competent evidence to establish their "claim for rent and royalty due from Squires." It is asserted that it is "agreed that the rights of both parties to this suit are to be measured" by section 7220. Hence the only question of importance presented is: Does section 7220 give appellants the priority which they claim?

Section 7220 is as follows: (1) "Every building, erection, improvement and plant erected, constructed, reconstructed, altered or repaired and all materials, fixtures, engines, boilers, pumps, belting, pulleys, shafting, machinery and other personal property furnished, repaired or placed on licensed or leased lots or lands shall, regardless of whether or not the owner of the license or lease has the right thereunder to remove the same or other personal property from such licensed or leased premises during or at the end of the term thereof, be held for the debt contracted for on account of the same and also the licensed interest or leasehold term for such lot and land on which the same is placed, repaired or erected, (2) and every mechanic, person or corporation who shall do or perform any work or labor upon or furnish, place or repair any building, plant, improvement, erection, material, fixture, engine, boiler, pump, belting, pulley, shafting, machinery or other personal property upon either licensed or leased lots or lands under or by virtue of any contract or account with the

owner or proprietor of the license or lease or with his or its agent, trustee, contractor or subcontractor, upon complying with the provisions of this article, shall have for his work or labor done or building, erection, improvement or plant erected, constructed, reconstructed, altered or repaired or material, fixture, engine, boiler, pump, belting, pulley, shafting, machinery or other personal property furnished, placed or repaired, a lien upon such building, plant, improvement, erection, and also upon such materials, fixtures, engines, boilers, pumps, belting, pulleys, shafting, machinery and such other personal property and also upon the license or lease on such lots or lands to the full extent of the number of acres or lots held under such license or lease by the owner thereof and regardless of whether or not the owner of such license or lease has the right thereunder to remove either during or at the end of the term thereof such building, plant, improvement, erection, materials, fixtures, engines, boilers, pumps, belting, pulleys, shafting, or machinery or other personal property thereon; (3) and in case the licensee or lessee shall have forfeited his license or lease, the purchaser of the buildings, plants, erections, improvements, materials, fixtures, engines, boilers, pumps, belting, pulleys, shafting, machinery or other personal property and licensed interest or leasehold term or so much thereof as remains unexpired under the provisions of this article shall be held to be the assignee of such licensed interest or leasehold term and as such shall be entitled to pay to the licensor or lessor all arrears of rents or other money, interest and costs due under said license or lease, unless the licensor or lessor shall have regained possession of the licensed or leasehold land, or obtained judgment for the possession thereof on account of the noncompliance by the licensee or lessee with the terms of the license or lease prior to the commencement of the buildings, erections, plants, or improvements erected, constructed, reconstructed, altered or repaired or prior to the time the materials, fixtures, engines, boilers, pumps, belting, pulleys, shaftings, machinery or other personal property is furnished, repaired or placed thereon, in which case the purchaser of the buildings, erections, plants, improvements, materials, fixtures, engines, boilers, pumps, belting pulleys, shafting, machinery or other personal property shall have the right to remove the same within sixty days after the purchase thereof, and (4) the owner of the ground shall receive the rent due to him payable out of the proceeds of the sale, according to the terms of the license or lease, down to the time of removing the buildings, erections, plants, improvements, materials, fixtures, engines, boilers, pumps, belting, pulleys, shafting machinery or other personal property.''

When stripped of particularities section 7220 provides: (1) That every building, improvement, materials, fixtures, etc., placed on licensed or leased lands shall be held for a debt contracted on account

of same, and also that the licensed or leased interest shall be held for such debt; (2) that every mechanic or materialman who shall do work upon or furnish material for any building, improvement, plant, fixtures, etc., upon licensed or leased lands shall have a lien upon said improvements and also upon the license or lease; (3) that in case the licensee or lessee has forfeited his license or lease the purchaser of the property under a lien judgment sale shall be held to be the assignee of the unexpired term of the license or lease, and such purchaser shall have the right to pay the licensor or lessor all rent or other money due under the license or lease unless the licensor or lessor shall have regained possession or obtained judgment for possession prior to doing the work or furnishing the material, in which case the purchaser shall have sixty days to remove the property; and (4) that the owner of the ground shall receive the rent due him out of the proceeds of the sale, according to the terms of the license or lease, down to the time of removing the property.

It is the contention of appellants that the fourth provision in section 7220, as we have designated the provisions, gives them priority or preference in the proceeds of the sale of the property. What is now section 7220, Revised Statutes 1919, was enacted in 1857. [Laws 1857, p. 668, sec. 2.] When first enacted the section was only applicable to St. Louis county, which then included the city. [Laws 1857, p. 668.] But the section was later given general application. [Joplin Supply Co. v. West, 149 Mo. App. 78, 1. c. 91, 130 S. W. 156.] The section at first did not cover licensed lands. In 1901, Laws 1901, page 206, the section was repealed and a new section enacted to cover licensed lands. In 1911, Laws 1911, page 312, the section was again repealed and the present section 7220 was enacted. Throughout the history of the section it has carried the provision respecting "the owner of the ground." This provision remained unchanged until 1911 when all the particulars after the word *buildings* were added. Also there were other changes made in 1911.

The section as amended in 1901 is considered at some length in Joplin Supply Co. v. West, supra, but not upon the question here involved. Able counsel found no case, and we find none, construing the provision respecting the rights of the owner of the ground. Appellants' contention that they are entitled to priority or preference in the proceeds of the sale of the property upon which the trial court adjudged the lien presents two distinct questions: (1) Are appellants *owners* as that term is used in the fourth provision of the statute? and (2) if so, are they entitled to the priority or preference claimed? We shall dispose of these questions in the order presented.

The lease from Page et al., the owners of the fee, to appellants does not appear in the record. All the facts that appear as to that instrument are that it is a mining lease; that it existed "for some

years'' prior to 1924; and that it expires in 1933. We may assume, however, that said lease was one common to the district and provided for some returns to the owners. Squires commenced operating under his license in September, 1924, after the license was executed on August 28, 1924, and continued to operate until June, 1925. The sublease from appellants to Squires, provided for in the license of August 28th, was not executed. The license agreement obligated Squires to furnish all labor, material and machinery, except the equipment then on the premises and owned by appellants. The license further provided that in the event Squires did not avail himself of the option given in the license to purchase the lease of appellants, then the premises and all the buildings and equipment thereon at the time of the execution of the license were to be left in tact and delivered to appellants. While the record does not show specifically that Squires delivered the premises, buildings and equipment, as provided in the license, back to appellants, there is nothing to the contrary, and we infer that such was done.

The trial court made no finding as to the amount Squires owed appellants for royalties accrued during his occupancy and operations under the license, but did find that he assigned to appellants all of his right, title, and interest in the property and improvements, upon which the lien was adjudged, to secure the payment of royalties which were owing from Squires to appellants. Also it was found that said royalties had not been paid. It was adjudged that the title to the property, upon which the lien was granted, was in appellants, but subject to the lien judgment.

The term *owner* has no restricted meaning, and has been defined many times under many varying statutes and facts. [See 32 Cyc. 1549, and Words and Phrases, first and second editions.] As applied to land one definition given in Cyc. is: ''Any person who has the usurfruct, control or occupation of the land whether his interest in it be less than a fee.'' In Robinson v. Schiltz, 135 Mo. App. 32, 115 S. W. 472, it was held that the phrase ''the person owning the adjoining fields'' under what is now section 4243, Revised Statutes 1919, a section in the trespass statute, was applicable to a tenant of the adjoining fields. Eastern Ohio Oil Co. v. McEvoy, 89 Pac. (Kan.) 1048, involved an alleged lien of a laborer who had done work for a licensee in drilling a well for oil and gas upon land of another. There it was said: ''In some States there are statutory provisions extending mechanics' liens to leasehold estates, but, regardless of such provisions, it seems to be settled that the word 'owner' is not limited in its meaning to the owner of the fee.''

Section 7220 of our mechanics and materialmen lien statute covers both a licensed and leasehold interest. Also the statute is remedial in its nature and should and does receive a liberal construction. [Sawyer & Austin Lumber Co. v. Clark, 172 Mo. 588, l. c. 598, 73 S. W.

137.] It is our conclusion that appellants are within the scope of the meaning of the phrase "the owner of the ground" as used in section 7220.

There is only one sale mentioned in section 7220, and it is there specifically provided that "the owner of the ground shall receive the rent due him payable out of the proceeds of the sale according to the terms of the license or lease down to the time of removing" the improvements sold. The fundamental rule of construction of any statute is to ascertain and give effect to the intention of the Legislature as expressed in the statute. [Lincoln University v. Hackmann, 295 Mo. 118, 243 S. W. 320.] As above shown the provision in section 7220 respecting the rights of "the owner of the ground" has been in the statute since its enactment in 1857. There can be no fair construction of this statute except that such owner is entitled to the rights which the statute gives him. Unless he is paid his rent out of the proceeds of the sale therein provided for then the statute as to the owner would mean nothing. We rule, therefore, that appellants have a priority or preference in the proceeds of the sale of the property upon which the lien was adjudged.

There were no royalties or rent due appellants except what accrued during the operation of the plant by Squires, but the amount due was not established. The judgment will, therefore, be reversed and the cause remanded with directions to ascertain the amount of royalties due appellants and that the judgment be modified by giving appellants priority or preference in the proceeds of the sale. It is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.