Carl L. **HUFF** et al., Apps.,
**Plaintiffs-Appellants,**

*v.*

**UNION ELECTRIC COMPANY,**
**Defendant-Respondent.**

**No. 40183.**

Missouri Court of Appeals,
Eastern District,
Division One.

March 11, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 18, 1980.

Application to Transfer Denied
June 10, 1980.

R. J. Slater, Godfrey P. Padberg, Padberg, McSweeney, Slater, Merz & Reid APC, St. Louis, for plaintiffs-appellants.

James J. Virtel, Jerry B. Wamser, Schlafly, Griesedieck, Ferrell & Toft, St. Louis, for defendant-respondent.

SNYDER, Presiding Judge.

This case involves construction of the workmen's compensation law. Appellants Carl L. Huff, an employee of McCarthy Brothers Construction Company, and his wife, Lillian Mae Huff, brought a third party action based on common law negligence against respondent Union Electric Company. The jury returned a verdict for appellants and assessed damages for the work related injury at $700,000.00.[1] The trial court set aside the verdict and granted respondent's motion for a new trial on the grounds that it was prejudicially erroneous to give Instruction No. 5 requested by appellants as a converse to respondent's Instruction No. 4. Instruction No. 4 directed a finding for Union Electric if the jury found facts making it Carl Huff's statutory employer.

Respondent Union Electric[2] contracted with McCarthy Brothers Construction Company for the purpose of erecting certain electrical transmission line towers along a strip of ground owned by the Terminal Railway Association and adjacent to its railroad track.

---

1. Of the $700,000.00, $600,000.00 represented damages for injuries sustained by plaintiff under Count I of his petition, $100,000.00 was awarded his wife under Count II and represented a damage award for the loss of consortium and services of her injured husband. For the sake of brevity, this opinion will refer to appellant in the singular.

2. The parties will sometimes be referred to by name.

There was a written agreement between Terminal and Union Electric under the terms of which Union Electric was allowed to construct and operate a high voltage transmission line on Terminal's right-of-way. Union Electric is designated the "licensee" in the agreement and Terminal the "licensor." The agreement was recorded in the office of the St. Louis County Recorder of Deeds. Among other things, the agreement provided that (subject to a $700.00 annual rental rate per linear mile) Union Electric could engage in the construction, maintenance or improvement of transmission lines on Terminal's property so long as this construction or other allowed activity met with Terminal's approval and did not interfere with the operation of Terminal's business.

A 34,500-volt transmission line had been located on the Terminal right-of-way for some time. Union Electric, interested in increasing the capacity of its transmission system, had designed a new transmission line which would carry 138,000 volts and thus help meet the ever-increasing demand for electrical power. The new 138,000-volt line was to be constructed adjacent and parallel to the old 34,500-volt line which was to be torn down and removed after construction of the new line was completed.

Bids were accepted from various contractors for the construction of these new towers, based on a design prepared by Union Electric. The bid of McCarthy Brothers Construction Company was accepted and the firm prepared to perform the work in accordance with its new contract. The contract provided that all work on the project was, "to be performed under the general direction, supervision, and responsibility" of McCarthy Brothers. Union Electric retained the right to inspect upon demand and, of course, the right of final acceptance of the completed work.

The contract further provided that, as work progressed, Union Electric could alter the project's specifications so as to deal with any special, unanticipated problems which might arise. Hugh Wilson, a Union Electric employee, was appointed "construc-tion supervisor" one of whose responsibilities was to determine the necessity for and extent of any deviation from the original design and inform Harlan Vanderschaff, McCarthy Brothers' "project engineer." When apprised of these deviations, Vanderschaff's job was to implement the changes in the manner prescribed by Wilson.

Appellant Carl L. Huff was employed by McCarthy Brothers in the capacity of "hoisting engineer." Huff's specific duty was the operation of heavy machinery and he was, at all times, subject to the direct control of McCarthy Brothers.

In order for Union Electric to maintain electrical service at the required level during construction it was necessary to keep the existing 34,500-volt line energized as much as possible, but realizing the danger inherent in the operation of construction machinery around high voltage wires, a procedure was established for turning off the current in the 34,500-volt line during working hours. Each day, as the work party from McCarthy Brothers arrived, Vanderschaff would call Union Electric and have the existing power lines de-energized.

On February 29, 1972, Vanderschaff followed the usual procedure and received an "all-clear" from Union Electric's personnel indicating the power lines had been de-energized as he had requested. Work proceeded as usual. Appellant was operating a caterpillar tractor, using it to pull a drilling rig into position. After the rig was positioned, the rig's drilling boom was raised. As it was raised, appellant dismounted from the tractor to adjust a winch cable which was interfering somehow with raising the boom. He was standing near his tractor holding the inch-and-a-quarter metal winch cable and a pin when the boom either made contact with the 34,500-volt line or came so close that the current arced to the boom. Obviously Union Electric had failed in its duty to de-energize the power lines. Appellant received a severe electrical shock, was rendered unconscious, and taken to a hospital for treatment. The extent of appellant's injuries is not challenged and is not pertinent to this appeal. There was sub-

stantial evidence to prove that appellant sustained serious and permanent injuries.

Resolution of this appeal hinges upon whether appellant is a statutory employee of Union Electric. Determination of appellant's status requires construction of § 287.-040, RSMo 1969 [3] which sets forth the law as to statutory employees in subparagraph one and an exception to the statutory employee provision in subparagraph three.[4] Construction of the statute requires definition of the words "owner" and "improvements" as they are used in subparagraph three.

If Union Electric had work which was in the usual course of its business done under contract, on its premises, it would have been liable as the statutory employer of Huff, the employee of McCarthy Brothers Construction Company and thus would be shielded from common law liability. § 287.-040.1.

On the other hand if Union Electric were the owner of premises upon which improvements were being erected by an independent contractor under § 287.040.3, the exception applies; Union Electric was not a statutory employer, and Union Electric is subject to suit by Huff for damages based on common law negligence.

■ In reviewing a trial court judgment granting a new trial an appellate court is more liberal in affirming the judgment than it would be had the motion for a new trial been denied. *Douglass v. Missouri Cafeteria, Inc.*, 532 S.W.2d 811, 813[1–3] (Mo.App.1975).

Appellant relies on four points in support of his claim that the trial court erred in granting respondent's motion for a new tri-

al. Three of the points relate to Instruction No. 5 which the trial court held to be erroneous. In his fourth point appellant contends that the trial court erred in holding that appellant was required to plead § 287.-040.3 as an affirmative avoidance of respondent's pleading of the affirmative defense of statutory employee under § 287.040.1.

Appellant contends the trial court erred in granting a new trial grounded upon a finding that it was prejudicial error to give Instruction No. 5 which was requested by appellant. The trial court ruled it was error to give the instruction because: (1) it failed to require the jury to find that Union Electric was the owner of the premises where the injury occurred; (2) the word "improvements" was not defined; (3) the introductory phrase "you cannot find for the defendant" deviated from any introductory phrase prescribed by MAI and directed the jury to render a verdict against the respondent; and, (4) it misled the jury and directed them to return a verdict in favor of appellant irrespective of their findings on instructions numbered two and three.

The instruction of which respondent complains, Instruction No. 5, was ostensibly given as a converse to respondent's Instruction No. 4. They read:

### "INSTRUCTION NO. 4

Your verdict must be for the defendant on the claim of Carl Huff and Lillie Huff for damages, whether or not defendant was negligent, if you believe:

First, on February 29, 1972, Carl Huff was an employee of and was paid by McCarthy Brothers Construction Company; and

---

3. Unless otherwise noted all statutory references are to RSMo 1969.

4. Section 287.040.1. "Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business."

Section 287.040.3. "The provisions of this section shall not apply to the owner of premises upon which improvements are being erected, demolished, altered or repaired by an independent contractor but such independent contractor shall be deemed to be the employer of the employees of his subcontractors and their subcontractors when employed on or about the premises where the principal contractor is doing work."

Second, McCarthy Brothers Construction Company had a contract with the defendant for the performance of the Page-Mason tower foundation work; and

Third, on February 29, 1972, McCarthy Brothers Construction Company, by and through its employees, including Carl Huff, was performing work in accordance with its aforesaid contract with defendant on premises in the exclusive control of defendant and said work was in the operation of the usual business of defendant; and

Fourth, at the time of the occurrence on February 29, 1972, plaintiff Carl Huff was doing work which was in the usual course of the business of defendant.

The term 'exclusive control' as used in this instruction means such control of the premises that the general public does not have an equal right to use them.

(Not in MAI. Submitted by Defendant.)

Definition: *Boatmen v. Superior Outdoor Advertising Co.*, 482 S.W.2d 743 (Mo.App. 1972)

### INSTRUCTION NO. 5

You cannot find for Defendant and against Plaintiffs under Instruction No. 4, whether or not you believe the propositions therein submitted to you, if you believe:

First, McCarthy Brothers Construction Company, by and through its employees, including Carl Huff, was performing work under a contract with Defendant for the Page-Mason tower foundation work; and

Second, the work McCarthy Brothers Construction Company was doing under the contract was the erection, alteration or repair of improvements.

(Not in MAI. Submitted by Plaintiffs.)"

*Definition of "Improvements"*

The definition of "improvements" as used in § 287.040.3 will be considered first because if the erection of the high-voltage transmission towers was not the erection of improvements for purposes of § 287.040.3, the exception does not apply, and assuming arguendo that the work being done was in the usual course of business of Union Electric and on its premises, appellant is restricted to his workmen's compensation remedy.

Predictably appellant argues that the work being done constituted improvements under the statute and respondent argues it did not. Instruction No. 5, submitted to the jury the question of whether the work McCarthy Brothers Construction Company was doing under "contract was the erection, alteration or repair of improvements." The jury found that the work was indeed "improvements."

Union Electric complained in its motion for a new trial, however, that the word "improvements" in Instruction No. 5 should have been defined for the jury. The trial court, in its order granting appellant's motion for a new trial, agreed and cited the failure to define the word improvements as grounds for a new trial.

■ Appellant incorrectly argues that the erection of the transmission towers was the erection of improvements as a matter of law. There was no dispute as to the facts of the construction, its location or who did the work, but the facts were such that fair-minded men could honestly draw different conclusions from them in connection with the ownership or use of the land. Therefore the question is one for the jury. *Brown v. Gamble Const. Co., Inc.*, 537 S.W.2d 685 (Mo.App.1976).

An instruction defining the word "improvements" is not mandatory under MAI, although many definitions are required.[5] Respondent did not submit or request an instruction defining "improvements." The

5. Among required definitions are definitions relating to negligence (MAI 11.00), uninsured motor vehicles (MAI 12.00), agency (MAI 13.00), right-of-way (MAI 14.00) and will contests (MAI 15.00).

question is whether the jury was misled by the failure to define the word "improvements" in the instruction.

"Improvements" is a word which has a common usage and is generally understood. An improvement, according to Webster's Third New International Dictionary, Unabridged, is "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs. . . ." The average juror would understand it to be as Webster defines it although the juror may not articulate it in those words. An improvement has also been defined as " 'work done or things built or placed upon land, rendering it more fit for use, and more capable of producing income.' C.J. 308, note (a)." *Allen v. Jackson County Savings & Loan Ass'n*, 232 Mo.App. 1098, 115 S.W.2d 7, 9 (1938).

The cases have held, for purposes of the workmen's compensation law, improvements include: a laundry water softening tank, *State v. Bland*, 354 Mo. 97, 188 S.W.2d 838 (1945); a private water main, *Allen v. Jackson County Savings & Loan Ass'n, supra* ; and a fence, *Lawrence v. William Gebhardt, Jr., & Son*, 311 S.W.2d 97 (Mo. App.1958). The jury could have concluded from the evidence that the erection of the transmission towers constituted improvements. Under the Webster definition and the definition adopted by the courts in *Allen, supra*, the towers made the property more useful and valuable, not only to Terminal Railway because they received money as rent which they did not receive before this, making the land more capable of producing income, but also to respondent because the lines to be strung on the towers would carry an increased electrical load which would earn additional revenue.

■ Many cases have held that failure to define commonly understood words in instructions is not error. A recent case in this court held that the failure to define "lifeline" in a swimming pool accident case was not error. *Chrisler v. Holiday Valley,*

*Inc.*, 580 S.W.2d 309, 314[13], 315[14] (Mo. App.1979). It was not error to fail to define the following terms: "agent" in *State v. Day*, 506 S.W.2d 497, 501[9, 10] (Mo.App.1974); "position of danger" in *Smith v. Wells*, 326 Mo. 525, 31 S.W.2d 1014, 1022[3–6] (1930); "substantially" and "material omission or defect" in *Moore v. McCutchen*, 190 S.W. 350, 352[9] (Mo.App. 1917); "great bodily harm" in *State v. Goodman*, 490 S.W.2d 86, 87[1, 2] (Mo.1973); and "hire," even though requested by the defendant, in *S. P. Personnel Assoc. v. Hospital B. & E. Co.*, 525 S.W.2d 345, 350[17, 18] (Mo.App.1975). The trial court should explain to the jury legal or technical terms occurring in its instructions but the meaning of ordinary words used in their usual or conventional sense need not be defined. *S. P. Personnel Assoc., supra.* Further, appellant failed to request an instruction defining "improvements" although he could have done so. It is not necessary to define words of common usage in the absence of a request. *Day, Smith, Goodman, S. P. Personnel Assoc., supra.* Whether the land was benefited by the erection of the new lines was for the jury to decide but there was no error in failing to define the word "improvements."

### Definition of "Owner"

The next and most difficult question for resolution is whether Union Electric was the owner of the premises where the improvements were being erected, and whether the definition of "owner" is a matter of law for the court or of fact for the jury.

■ The definition is a matter of law because "owner" is a legal term defining the rights held by persons in property, in this case real property, with all the legal ramifications of real property ownership which have developed over the years. It is not such a word as "improvements" which is a word commonly understood by the average juror.

■ The workmen's compensation law must be liberally construed in favor of employees to secure its benefits to the greatest

number. *Marie v. Standard Steel Works*, 319 S.W.2d 871 (Mo. banc 1959). But whether there is workmen's compensation coverage is not at issue here. The issue is the common law liability of respondent, and the law must be strictly construed when existing common law rights are affected. *Harryman v. L & N Buick-Pontiac, Inc.*, 431 S.W.2d 193 (Mo. banc 1968). Section 287.-040.1 takes away the common law rights of employees for negligence of certain third parties by defining the third parties as statutory employers, even though they are not actual employers. Section 287.040.3 sets forth an exception to the statutory employer provision as to owners of premises where improvements are erected by an independent contractor. These owners are not statutory employers and may be held liable for common law negligence by the employees of the independent contractor. If there is a close question, as there is here, the decision should be weighted in favor of retention of the common law right of action. *Harryman, supra.*

There was no instruction requiring the jury to find that Union Electric was the owner of the premises. Instruction No. 5 submitted by appellant contains no reference to "owner" and thus does not fully hypothesize all of the elements in § 287.-040.3. The trial court held that it was prejudicially erroneous to fail to require a jury finding that Union Electric was the owner of the premises because it assumed away a material element of § 287.040.3 and thus erroneously stated the law. If the trial court's judgment in this respect is correct, the judgment granting a new trial must be affirmed. If the definition of "owner" for purposes of the statute is a matter of law, and if as a matter of law respondent Union Electric by reason of its agreement with Terminal Railway was the owner of the premises where the transmission towers were erected, then the trial court's judgment granting a new trial may not be affirmed because of the failure to require a jury finding that Union Electric was an owner of the premises.

Missouri cases have taken a broad view of the word "premises" when it is used in connection with § 287.040.1. Premises, for the purposes of § 287.040.1, has been held to mean "any place under the exclusive control of the statutory employer where his usual business is being carried on or conducted" and includes "locations that temporarily may be under the exclusive control of the statutory employer by virtue of the work being done. (*Raef v. Stock-Hartis, Inc.*, Mo.App., 416 S.W.2d 201, 208) . . .." *Boatman v. Superior Outdoor Advertising Co.*, 482 S.W.2d 743, 745[1–3] (Mo.App. 1972). In *Boatman* the court held that, for purposes of § 287.040.1, real property owned by others was the premises of a licensee authorized to enter on the property for purposes of painting an outdoor advertising sign. Accord: *State v. Fulbright*, 350 Mo. 858, 169 S.W.2d 59 (1943) and *Offutt v. Travelers Insurance Company*, 437 S.W.2d 127 (Mo.App.1968).

■ Although the foregoing construction of "premises" has been applied only to § 287.040.1 in the cases, the same construction should apply where the word is used in § 287.040.3. A word used two or more times in the same section of a statute should have the same meaning wherever it appears. The legislature could not have meant premises to mean one thing in § 287.040.1 and a different thing in § 287.-040.3. *United States v. Vargas*, 380 F.Supp. 1162, 1166 (E.D.N.Y.1974). *United States v. Brunett*, 53 F.2d 219, 234 (W.D. Mo.1931).

■ The railroad right-of-way was "premises" for purposes of § 287.040.3. Respondent admittedly exercised dominion and control over the land even though the fee title was in Terminal Railway. Respondent had exclusive control over the location by virtue of the work being done. It could erect improvements on the land. It had a right of access greater than the public at large. The rights respondent had under the license agreement with Union Electric were assignable by the terms of the agreement. If then, the right-of-way property was "premises" was respondent the "owner"? The two words are inextricably entwined in determining the meaning of the statute.

There are no Missouri cases defining "owner" for purposes of § 287.040.3. The term "ownership" however, has been defined as follows by the Missouri Supreme Court:

"The term 'ownership' cannot be said to have a fixed, definite meaning. *Siemer v. Schuermann Building & Realty Co.,* Mo.Sup., 381 S.W.2d 821, 826; 67 C.J.S. Own, p. 547. Its meaning varies in the context in which the term is used. Used here, with the word 'title,' the legislative intent must have been to denominate some interest or right other than the so-called 'bundle of rights' encompassed by the term 'title.' According to Black's New Dictionary (Rev. 4th Ed.), the word 'Owner' 'is not infrequently used to describe one who has dominion or control over a thing, the title to which is in another.'"

*State ex rel. Thompson-Stearns-Roger v. Schaffner,* 489 S.W.2d 207, 215[6, 7] (Mo. 1973). The *Thompson-Stearns-Roger* case concerned taxation of tangible personal property but the same principles of interpretation apply.

Black's Law Dictionary, Revised 4th Ed., also says of the word "owner," "The term is, however, a nomen generalissimum, and its meaning is to be gathered from the connection in which it is used, and from the subject-matter to which it is applied."

A lessee was found to be an owner in *Rogers Foundry Co. v. Squires,* 221 Mo.App. 17, 297 S.W. 470 (1927). In that case lessees under a mining lease were held to be entitled to rent payments because they were within the scope of the meaning of the phrase "owner of ground." The court at 297 S.W. page 473 in *Rogers Foundry Co.* defined "owner" as " '[a]ny person who has the usufruct, control, or occupation of the land whether his interest in it be less than a fee," quoting 32 Cyc. 1549.

A mortgagee was found to be an "owner of property" for condemnation purposes. *Morgan v. Willman,* 318 Mo. 151, 1 S.W.2d 193 (1927). The holder of a deed of trust was an "owner of property" for purposes of due process. *Guaranty Savings & Loan*

*Ass'n v. City of Springfield,* 346 Mo. 79, 139 S.W.2d 955 (banc 1940). In its broader sense owner means any person beneficially interested in property. *Siemer v. Schuermann Building & Realty Co.,* 381 S.W.2d 821, 826 (Mo.1964).

In a Florida case which is strikingly similar to this one on the facts, an injured employee was allowed to recover for an electrical utility's common law negligence in failing to de-energize a piece of apparatus. The injury occurred in a vault owned by a shopping center to which the utility had easement access. Although Florida's statute is different from Missouri's and no issue was raised as to ownership, the court found the utility to be the owner for purposes of the workmen's compensation statute. *Florida Power and Light Company v. Brown,* 274 So.2d 558 (Fla. 3d D.C.A.1973).

In Pennsylvania a lessee who constructed a building on leased property was held liable for common law negligence as to an employee of an independent contractor. The court characterized the defendant as "lessee-owner" and said "a lessee, as to the work involved, (i. e. as to the building construction) is in the same position as an owner." (Explanation added.) *McDonald v. Levinson Steel Co.,* 302 Pa. 287, 153 A. 424, 427[6, 7], 428[12] (1930).

The Florida and Pennsylvania decisions are not precedent in Missouri but the similarity of the factual situations and the finding of ownership lends support to a like finding here.

Respondent did not have an easement in the railroad right-of-way as the term easement is commonly understood. It had a license under an agreement which in fact gave respondent more control over the land than it would have had under the terms of many easements; and as much control as is contained in many leases. It had exclusive control by virtue of the work being done. Union Electric had the right to erect and maintain improvements, improvements of massive dimensions, towers up to one hundred fifty feet in height and with bases measuring nine feet in diameter and

extending to a depth of thirty feet. It had the right to go on the premises and maintain those towers and the high voltage transmission lines which the towers supported. Respondent recorded the license agreement thus giving public notice that it had an interest in the land.

It is true that the license agreement specified that the railroad's use took precedence over the rights granted to Union Electric, but as a practical matter the 34,500-volt line had been located on the right-of-way for years and an inference can be drawn that the 138,000-volt line will remain and be maintained on the right-of-way for years to come. The license contract is part of the record. It grants respondent present and continuing dominion over the right-of-way to construct, operate and if necessary, place additional low-voltage circuits on the towers. Respondent was permitted to cross over the Terminal right-of-way and tracks with the transmission lines and was expressly requested to remove weeds and grasses from around the poles and towers, a duty which would require its continuous presence on the premises.

After considering carefully the provisions of the license agreement, the evidence as to the construction, the history of respondent's relation with Terminal Railway, the definitions of "owner" in Missouri and foreign cases, and mindful that § 287.040.3 was included in the law to preserve common law rights in certain situations and should be liberally construed to preserve those common law rights, this court concludes that for purposes of the statute respondent was an "owner of the premises" as a matter of law.

Respondent argues forcefully that the word "owner" in the third subsection should be limited to owners in fee simple, but cites no authority for its argument except reference to several cases which concern fee simple owners but which do not consider the question as to other possible ownership relations.

Respondent also argues that its use of the railroad right-of-way is limited because it is subordinate to the operations of Terminal Railway and any other uses to which the right-of-way and property were being put at the time of the agreement. There was a provision that Union Electric had the obligation to completely remove its facilities if it interfered with the railway operation. On the other hand, in the practical day-to-day operation of the agreement between the parties, the towers were erected to remain for an indefinite time and Union Electric controlled the towers and the land to the extent necessary for the operation of the transmission lines.

Respondent further contends the law should be liberally construed to extend workmen's compensation benefits to the largest possible class. There is no question of lack of workmen's compensation coverage here. Appellant has already collected his benefits. The strict construction applicable to the taking away of common law benefits under the authority of *Harryman, supra,* is proper here. Respondent cites a federal case, *Atlas Powder v. Hanson,* 136 F.2d 444, 448[4] (8th Cir. 1943) which holds that the third subsection must be strictly construed so as not to defeat the general intent and purpose of the act. Aside from the fact that it is a federal case and although persuasive, not controlling, there is no question of defeating the general intent and purpose of the act because appellant's workmen's compensation benefits are assured.

Respondent's additional arguments relating to real property law have been reviewed and rejected.

*Instruction No. 5*

In addition to the questions raised by the trial court concerning improvements and ownership in connection with Instruction No. 5, the trial court also found that it was prejudicially erroneous to use the introductory phrase "you cannot find for defendant" because: the language deviated from MAI; directed the jury to render a verdict against the defendant; misled the jury by directing them to return a verdict in favor of plaintiffs regardless of their findings on Instructions No. 2 and 3, plaintiffs' verdict

directing instructions; and because it did not require a finding that the work was being done by an independent contractor. The trial court also found Instruction No. 5 should not have been given because it attempted to set forth an affirmative avoidance to the affirmative defense pleaded by respondent in its last amended answer and the affirmative avoidance was not pleaded by appellant. Appellant contends that it was not error to give Instruction No. 5.

### Affirmative Avoidance

The trial court's ruling that Instruction No. 5 should never have been submitted because it attempted to set forth an affirmative avoidance which was not pleaded by appellant (Rule 55.01), and was not tried by either express or implied consent as provided in Rule 55.33(b) will be considered first. In support of his claim the trial court erred in ruling that the giving of Instruction No. 5 was error for this reason, appellant argues respondent itself was required to negate the exception contained in § 287.040.3 because it pleaded § 287.040.1 as an affirmative defense. His theory is that a party who pleads an affirmative defense contained in a statute is required also to include in its pleading facts delineating an exception to the statutory defense when the exception is contained in the same section of the statute.

Briefly, the pleadings consisted of appellant's first amended petition, amended by interlineation, and respondent's separate second amended answer. In its second amended answer respondent raised two affirmative defenses, contributory negligence and that respondent was Carl Huff's statutory employer as that term is defined in § 287.040.1. Appellant did not reply to the statutory employer affirmative defense.

Instruction No. 4 was submitted to the jury at the request of respondent. To counter respondent's Instruction No. 4, appellant submitted Instruction No. 5 which purported to delineate the elements of § 287.040.3, this in an attempt to distinguish appellant's cause of action as coming under the exception set forth in that subsection.

Respondent pleaded the defense provided by § 287.040.1 without pleading the exception set forth in § 287.040.3. Respondent initially brought the statute into issue and in its motion for a new trial complained of appellant's failure to come forward and plead the exception. In support of this argument, respondent cites *Jaycox v. Brune*, 434 S.W.2d 539 (Mo.1968).

The cases are dissimilar. The import of the *Jaycox* decision was such that one must avoid an affirmative defense by pleading responsively so as to apprise the one pleading the defense of the grounds for the avoidance. *Jaycox* is distinguishable in that it concerned the affirmative defense of release. Rule 55.08. Because of the multitude of avoidance issues one might normally associate with the avoidance of a pleaded release, the *Jaycox* court concluded it was only reasonable that plaintiff be required to plead those theories of avoidance on which he intended to rely.

■ Union Electric's situation is not similar to that of the defendant in *Jaycox*. Union Electric pleaded a section of a statute giving rise to a defense, § 287.040.1. The same section of the statute also contained an exception to the defense, § 287.-040.3. A defendant who pleads a statutory defense must also plead the inapplicability of exceptions to that defense if the exceptions are contained in the same section of the statute, just as a plaintiff who pleads a statutory right must plead that he does not fall within an exception to the right contained in the same section of the statute.

■ The law in Missouri is: where exceptions to the plaintiff's right to recover on a statutory cause of action are contained in the same section of the statute which gives the right of action, the petition must be so framed as to show that a defendant does not come within the exception. *Nichols v. Davidson Hotel Company*, 333 S.W.2d 536, 541[3] (Mo.App.1960); *Gardner v. Linwedel*, 192 S.W.2d 613, 615[2] (Mo.App. 1946); *Warren v. American Car & Foundry Co.*, 327 Mo. 755, 38 S.W.2d 718, 721[1–3] (banc 1931); *Span v. Jackson, Walker Coal*

*and Mining Co.*, 322 Mo. 158, 16 S.W.2d 190, 200[16, 17] (1929); *Mathieson v. St. Louis & S. F. Ry. Co.*, 219 Mo. 542, 118 S.W. 9, 11[1] (1909).

■ The pleading of an affirmative defense is similar to pleading a statutory right and the same rule prevails. The pleader of the right or affirmative defense must plead the inapplicability of the exception if it is contained in the same section of the statute. It is not necessary for the plaintiff to plead the exception as an affirmative avoidance.

■ The statutory defense raised by respondent was not such an affirmative defense as to require a pleaded avoidance. The failure of appellant to respond must be construed as a tacit denial. Rule 55.09; *Smith v. Lannert*, 429 S.W.2d 8, 12, 13[2–6] (Mo.App.1968); *Keener v. Black River Electric Co-operative*, 443 S.W.2d 216, 218[5, 6] (Mo.App.1969).

Appellant's contention that the trial court erred in granting a new trial because the submission of Instruction No. 5 was prejudicially erroneous for other reasons must now be considered.

### Statutory Employee: Law or Fact?

Initially both parties contend that the applicability of § 287.040 could have been resolved by the trial court as a matter of law. Appellant argues that under the evidence presented and the applicable law, respondent was not a statutory employer. Predictably, respondent asserts that as a matter of law it was a statutory employer.

■ As a general proposition it is error to remove an essential element of a case from the jury's consideration. *Ogden v. Toth*, 542 S.W.2d 17 (Mo.App.1976). However, a jury should not be required to find an element or fact not actually contested or in issue. *Ogden, supra. Cline v. Carthage Crushed Limestone Company*, 504 S.W.2d 102 (Mo.1973); *Young v. Jefferson Hotel Corporation*, 541 S.W.2d 32 (Mo.App.1976); *Siedler v. Tamar Realty Company*, 491 S.W.2d 566 (Mo.App.1973).

■ Whether or not Union Electric was a statutory employer in this case is a question of fact for the jury because considering the evidence all reasonable minds would not conclude that the erection of the towers was an operation of the usual business of Union Electric. This issue was decided against the respondent by the jury when they considered Instruction No. 4. *Walton v. United States Steel Corporation*, 362 S.W.2d 617, 622[4] (Mo.1962) and *Sippel v. Custom Craft Tile, Inc.*, 480 S.W.2d 87, 90[2, 3] (Mo.App.1972).

■ No claim of error has been raised in connection with Instruction No. 4, but the fourth paragraph contains a misdirection. It requires a finding for the defendant if, in addition to a favorable finding on the first, second and third paragraphs, the jury finds appellant was doing work which was in the usual course of business of respondent. However, it is possible for a claimant to be doing work which is in the usual course of business of a claimed statutory employer and yet not be a statutory employee. If the work being done is in the usual course of business of the claimed statutory employer but also is the erection of improvements by an independent contractor on premises owned by the claimed statutory employer, the exception in § 287.040.3 applies.

The jury could have found the erection of the towers to be in the usual course of business of Union Electric, but regardless of that finding, Union Electric would not have been a statutory employer if the tower work was the erection of improvements by an independent contractor. *Bobbitt v. Ehlers*, 131 S.W.2d 900 (Mo.App.1939).

### Inclusion of Independent Contractor in Instruction No. 5

The two additional errors in connection with Instruction No. 5 on which the trial court based its new trial order were the introductory language "You cannot find for defendant" and the failure to include in the instruction a requirement that the jury find McCarthy Brothers was an independent contractor.

McCarthy Brothers was an independent contractor as a matter of law. All of the evidence supports this conclusion. There was no dispute about it. The contract which was in evidence contained language which provided all work was "to be performed under the general direction, supervision and responsibility" of McCarthy Brothers. Union Electric did not retain the requisite degree of control over McCarthy Brothers which would destroy McCarthy Brothers' independent contractor status. A jury should not be required to find an element or fact not actually contested or in issue. *Ogden, supra; Young, supra; Siedler, supra; Cline, supra.* Therefore, the instruction was not defective with respect to an independent contractor finding.

*Use of "You cannot find for defendant"*

The trial court said that the use of the introductory language, "You cannot find for defendant," was prejudicially erroneous because it was a complete deviation from any introductory phrases used in MAI and directed the jury to find the verdict in favor of plaintiffs regardless of their findings on Instructions No. 2 and 3, plaintiffs' verdict directing instructions based on common law negligence.

An appropriate non-MAI instruction need only be brief, simple, impartial and nonargumentative. Rule 70.02(e); *Sands v. R. G. McKelvey Bldg. Co.*, 571 S.W.2d 726 (Mo.App.1978); *Van Dyke v. Major Tractor & Equipment Co.*, 557 S.W.2d 11 (Mo.App.1977). Although this court would not recommend the use of the language complained of, the instruction was not prejudicially erroneous because of it. The ultimate test of the propriety of a non-MAI instruction is whether it follows the substantive law, and whether a jury, composed of ordinary people, can understand it. *Arthur v. Royse*, 574 S.W.2d 22 (Mo.App.1978).

Respondent cites *Ogle v. Terminal R. R. Ass'n of St. Louis*, 534 S.W.2d 809, 812 (Mo.App.1976) in support of its contention that the giving of Instruction No. 5 was prejudicially erroneous. The case is not applicable. The *Ogle* decision related to the giving of the incorrect MAI damage instruction. *Ogle* is authority for a finding of error when a party deviates from MAI, but there is no MAI instruction on § 287.040.3.

*Failure to Negate Instructions No. 2 and 3*

Finally, appellant claims the trial court erred when it said Instruction No. 5 misled the jury because it instructed them to find for appellant regardless of their findings on Instructions No. 2 and 3. Appellant is correct in his assertion that the Missouri Supreme Court has resolved this issue in his favor. A similar instruction was given in *Cline, supra*, at page 113[10]. The defendant challenged the instruction on the ground that it purported to direct a verdict without containing all of the essential elements of a verdict director. The court held to the contrary:

"No. 7 did not constitute a general direction of a verdict for plaintiff, as appellant suggests. It was in effect a direction to find for plaintiff (and not for CCL) on the issue of statutory employer. No. 7 complemented and completed the submission under § 287.040 partially initiated by offering No. 6. CCL's No. 6 submitted the 'operation of the usual business' basis for a finding of statutory employer-employee relationship. No. 7 supplied the exception not negatived by No. 6. A finding for plaintiff under No. 7 would negative CCL's defense of statutory employer and vindicate plaintiff in his choice of a common law remedy. No. 7, accordingly, constituted a permissible converse instruction."

The case at bar presents the identical question which must be answered in the identical manner. Instruction No. 5 was not a model but it followed the law and was understandable by a jury composed of ordinary people.

Respondent also claims that the court erred in giving Instruction No. 7, the burden of proof instruction, to the jury because the instruction made reference to

"facts" submitted in appellant's Instruction No. 5. Appellant contends this issue is not preserved for review because respondent's motion for a new trial erroneously made reference to Instruction No. 6 rather than Instruction No. 7. This inadvertent error should not preclude consideration of the issue. *Jackson v. Ricketts*, 288 S.W.2d 10 (Mo.App.1956). The discussion of this point in the new trial motion obviously refers to Instruction No. 7.

Instruction No. 7 was patterned after MAI 3.01 which requires the jury to place the burden on the plaintiff to prove "the propositions necessary to support his claim against defendant." Instruction No. 7 stated that the burden was on appellant to prove "the propositions necessary to support the facts submitted in Instruction No. 5 [that McCarthy Brothers was performing work under a contract with respondent and that the work was the erection, alteration, or repair of improvements]." Respondent contends that the use of the word "facts" in the instruction caused the jury to believe that the elements of Instruction No. 5 *were* facts and that McCarthy Brothers was performing work or improvements under contract. Although the word "facts" may not have been the best choice, the import and emphasis of the instruction was clear that appellant was required to prove that he was performing erection, alteration, or repair of improvements pursuant to a contract between McCarthy Brothers and respondent. The use of the word "facts" in Instruction No. 7 was not prejudicial to respondent; the instruction read as a whole, did not misstate the law or mislead the jury. *Wims v. Bi-State Development Agency*, 484 S.W.2d 323 (Mo. banc 1972); *Arthur v. Royse*, 574 S.W.2d 22 (Mo.App.1978).

Respondent's motion to strike Points II, III and IV of appellant's brief was taken with the case. The motion is denied.

This court has read carefully the lengthy transcript submitted and examined the numerous cases cited by both parties. The well-prepared briefs have been read and reread. A decision was reached only after thorough research of the law on the various points raised, particularly the two subsections of § 287.040 of the workmen's compensation law, the first subsection which creates the status of statutory employer and the third subsection which delineates an exception to the first. Also considered carefully was the required liberal standard of review of judgments granting new trials.

The industrial world has changed materially since § 287.040 became law. In the early days the section was enforced to prevent employers from avoiding their responsibilities under the workmen's compensation law. In latter times the section is used more frequently by employers who seek a determination that they are statutory employers in order to avoid common law liability. After thorough consideration of the facts, law and the trial court's reasoning, this court concludes that the order granting a new trial should be reversed and the cause remanded to the trial court with instructions to reinstate the jury verdict.

It is so ordered.

SMITH and PUDLOWSKI, JJ., concur.